DON'S MARINE, INC., Appellant,

v.

Jerry HALDEMAN et al., Appellees.

No. 1198.

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 27, 1977.

Rehearing Denied Nov. 17, 1977.

Frank D. Masters, San Antonio, D. Dean Patton, Beeville, for appellant.

Wm. L. Ellis, Ellis, Andrews & Lawrence, Inc., Aransas Pass, Edwin J. Terry, Jr., Austin, Robert W. Dupuy, Wood, Boykin & Wolter, Corpus Christi, for appellees.

## OPINION

NYE, Chief Justice.

This is a commercial law case. Don's Marine brought suit against Jerry Haldeman to collect $25,000.00 allegedly constituting the sum still due and owing on a 30 foot Sea Ray boat purchased by defendant Haldeman. Don's Marine also sought to recover some $5,439.18 for additional items added to the boat after the alleged purchase by Haldeman. Haldeman counterclaimed to recover his $10,000.00 down payment on the boat. Trial was to the court without a jury. The court ruled in Haldeman's favor; entered a take nothing judgment against Don's Marine; and awarded Haldeman his down payment plus attorney's fees. Don's Marine has perfected its appeal to this Court.

On April 23, 1975, Haldeman and his wife went to Don's Marine to look for a fishing boat that could be used for fishing in the Gulf of Mexico. Their attention was directed to a 30 foot Sea Ray. Haldeman returned the next day evidently having decided to purchase the boat if Don's Marine would meet his demands. The price was negotiated to be $35,000.00 with Haldeman giving Don's Marine a $5,000.00 cash down payment, plus trading in another boat owned by him for $5,000.00, and executing a draft for $25,000.00 on the First State Bank of Aransas Pass. The sales invoice on the boat was prepared by Al Bauman, the sales manager for Don's Marine. The invoice stated: "Boat to handle and perform to customer satisfaction otherwise sale void." Haldeman, Bauman and one of

Don's Marine's mechanics then took the boat from Corpus Christi to Haldeman's dock at "City by the Sea" near Aransas Pass, a distance of approximately 20 miles, where they left the boat. On April 29, 1975, Don's Marine deposited Haldeman's draft in its account at Corpus Christi Bank and Trust.

On May 1, 1975, the draft was presented for payment to First State Bank of Aransas Pass. However, Haldeman had left instructions with the Executive Vice President of the bank that the draft was not to be paid until he gave his approval. At the time of presentment no approval had been given by Haldeman. On May 7, 1975, the draft was returned to the Corpus Christi bank. On May 12, 1975, the Corpus Christi bank again presented the draft for payment. Again the draft was returned by the Aransas Pass bank. The Corpus Christi bank then returned it to Don's Marine marked: "dishonored." During this period the boat had remained in Haldeman's possession. The certificate of title to the boat was placed in Haldeman's name by Don's Marine. However, during this entire period Haldeman testified he was dissatisfied with the boat's handling and performance. In the meantime, Don's Marine made at least two attempts to satisfy Haldeman's complaints.

On May 23, 1975, Haldeman had his attorney contact Don's Marine's general manager about returning the boat for his $5,000.00 in cash and his trade-in boat. Haldeman and his attorney both testified that Don's Marine agreed to the return. On May 27, 1975, Haldeman and his attorney were then informed by Don's Marine that they would not accept the return of the boat. Haldeman retained possession of the boat and Don's Marine promised Haldeman that the defects would be repaired and that the boat would be made to meet his specifications. During this period many extras and modifications were added to the boat at the instance of Haldeman. Finally, in early September 1975 Haldeman abandoned attempts to fix the boat after repeated failures by Don's Marine to correct the problems to his satisfaction. Haldeman

simply chained the boat to his pier and took the necessary steps to protect the boat from further deterioration. In early October 1975 Haldeman again tendered the boat to Don's Marine. It was refused.

On October 14, 1975, Don's Marine brought suit to recover the balance owed of $25,000.00 plus some $5,434.18 in additional items added to the boat. Haldeman answered and counterclaimed for his down payment and trade-in. In July of 1976, by agreement of the attorneys and without prejudice to anyone's claims, the boat was returned to Don's Marine for resale to avoid further waste and depreciation.

Appellant's only point of error is that the trial court erred in not holding that Haldeman had accepted the boat in question thereby consummating the contract of sale. In appellant's arguments under its point of error, it is contended that Haldeman failed to properly reject the boat under § 2.601 or § 2.604 of the Tex.Bus. & Comm. Code Ann. (1968) and that the trial court's judgment to the contrary is against the great weight and preponderance of the evidence. At this point it should be noted that Don's Marine did not request any findings of fact and conclusions of law and none were filed by the trial court. In this situation this Court must presume that the trial

court's judgment implies all necessary fact findings to support it. *Seaman v. Seaman,* 425 S.W.2d 339 (Tex.Sup.1968). It is presumed upon appeal that the trial court found every issue of fact necessary to sustain the judgment when such fact issue is raised by the pleadings and finds support in the evidence. We must affirm the judgment of the trial court unless the appellant (Don's Marine) can affirmatively show that the undisputed evidence negatives at least one essential element necessary to support the judgment or can show that such findings are against the overwhelming preponderance of the evidence. *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n. r. e.); *City of Center v. Roberts,* 469 S.W.2d 27 (Tex.Civ. App.—Tyler 1971, writ ref'd n. r. e.); *Giles v. Wiggins,* 442 S.W.2d 839 (Tex.Civ.App.— Forth Worth 1969, writ ref'd n. r. e.).

The sections of the Business & Commerce Code involved in this appeal are: Sec. 2.601; Sec. 2.602; Sec. 2.606 and Sec. 2.608. Under these sections of the Business & Commerce Code there are two theories of law that are supported by the evidence and which would sustain the trial court's judgment. The first theory is that Haldeman never accepted the goods under §§ 2.601, 2.602 and 2.606.[1] Haldeman testified re-

1. § 2.601. Buyer's Rights on Improper Delivery

Subject to the provisions of this chapter on breach in installment contracts (Section 2.612) and unless otherwise agreed under the sections on contractual limitations of remedy (Sections 2.718 and 2.719), if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may
(1) reject the whole; or
(2) accept the whole; or
(3) accept any commercial unit or units and reject the rest.

§ 2.602. Manner and Effect of Rightful Rejection

(a) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.
(b) Subject to the provisions of the two following sections on rejected goods (Sections 2.603 and 2.604),
(1) after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(2) if the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this chapter (Subsection (c) of Section 2.711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but
(3) the buyer has no further obligations with regard to goods rightfully rejected.
(c) The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this chapter on Seller's remedies in general (Section 2.703).
§ 2.606. What Constitutes Acceptance of Goods
(a) Acceptance of goods occurs when the buyer
(1) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
(2) fails to make an effective rejection (Subsection (a) of Section 2.602), but such acceptance does not occur until the buyer has had a

peatedly that he was never satisfied with the boat and it never met his standards of providing a smooth dry ride. He testified that he had only retained possession of the boat for Don's Marine and had not accepted it under the contract.

Under § 2.601 Haldeman had the right, upon tender of the boat to reject it for failure to conform to the contract, i. e., to perform to his "satisfaction." However, this right to reject must have been made within a reasonable time after it had been tendered or delivered to him under § 2.602. Both Haldeman and his attorney testified that the boat was rejected and that they tendered the boat back to Don's Marine in slightly less than a month after he had taken possession of the boat. The determination under §§ 2.602 and 2.606 of whether or not a buyer has accepted or rejected goods is a fact question. *Pacific Products v. Great Western Plywood*, 528 S.W.2d 286 (Tex.Civ.App.—Fort Worth 1975, no writ). Therefore the question becomes whether or not Haldeman's waiting 30 days to reject the boat could constitute an effective timely rejection.

In *Bowen v. Young*, 507 S.W.2d 600 (Tex. Civ.App.—El Paso 1974, no writ) the court held that possession, occupancy and spending some $581.00 on repairs to a motor home over a one year period constituted treatment inconsistent with the owners' rights so as to preclude rejection by the buyer. The primary action which precluded rejection in the *Bowen* case was either dominion over the goods or alteration of the goods by the purchaser. In *Pacific Products v. Great Western Plywood*, supra, a delay of some 13 days was held not to be unreasonable. The only other Texas case that we could find which has discussed the question of reasonable notice of rejection is *Explorers Motor Home Corp. v. Aldridge*, 541 S.W.2d 851 (Tex.Civ.App.—Beaumont 1976, writ ref'd n. r. e.). The court there held that a delay of two years was unreasonable when coupled with use and alterations of the goods. Whether notice of rejection is reasonable depends on the facts and circumstances of each case.

In the case at bar the record reveals that Haldeman wanted an offshore fishing boat with a quiet, smooth and dry ride. He expressed these specific qualifications to Al Bauman, Don's Marine's salesman. Obviously, in order to see if a boat met these qualifications, it would require several test runs under varying weather conditions. The record reveals that although Haldeman had possession of the boat for approximately thirty days before rejection, he only used the boat for about eight days during this period. Haldeman lived in Austin and only visited his home at the "City by the Sea" on weekends. Under these circumstances it is not unusual for one to take thirty days to determine whether or not a boat would meet a specified standard in order to accept or reject the same. This the trial court impliedly found.

The second legal theory which is supported by the evidence and which would sustain the trial court's judgment is that Haldeman did accept the boat but later revoked that acceptance under § 2.608.[2]

reasonable opportunity to inspect them; or (3) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is an acceptance only if ratified by him.
(b) Acceptance of a part of any commercial unit is acceptance of that entire unit.

2. § 2.608. Revocation of Acceptance in Whole or in Part
(a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
(1) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or

(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
(c) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Under this section a buyer may accept goods when the seller assures him a non-conformity will be cured and then fails to do so. It is undisputed that Haldeman did not relinquish possession of the boat to Don's Marine in May of 1975 but rather kept the boat because, according to Haldeman's testimony, he was assured by the president of Don's Marine that the problems would be corrected. On this basis alone Haldeman claims he retained possession of the boat until October when he again claims that he rejected the boat. Haldeman testified that during the period between May and September 1975 he continued to use the boat on occasions but it never did meet his satisfaction. He testified that in October when he again rejected the boat, it still was noisy, hard to handle, and constantly got the passengers and crew wet. Haldeman did not use the boat after October. His only contact with the boat after that time was to maintain the boat with reasonable care awaiting Don's Marine's disposition of the boat. (See Section 2.602(b)(2) of the Business & Commerce Code).

█ Haldeman's delay of some three months in revoking his acceptance would be justified. A delay in revocation is justified where the seller makes repeated assurances that the non-conformity will be cured and attempts to do so. See *Wadsworth Plumbing & Htg. v. Tollycraft Corp.*, 277 Or. 433, 560 P.2d 1080 (1977). In our case the defect to be remedied was major in nature. Revocation was justified under Section 2.608 where the defect substantially impaired the value of the boat and the seller failed to remedy the defect. See *General Motors Corporation v. Earnest*, 279 Ala. 299, 184 So.2d 811 (1966); *Tiger Motor Company v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969).

We hold that there is ample evidence to support the trial court's implied findings, under either theory of recovery, for Haldeman. Appellant's point of error is overruled.

The Corpus Christi Bank and Trust and First State Bank of Aransas Pass, appellees, have filed their joint motion praying that we affirm that portion of the trial court's judgment which was rendered in favor of their banks. Their motion is well-taken. The appellant has failed to raise any point of error with respect to the trial court's judgment in favor of said banks and therefore such judgment should be accordingly affirmed as to all appellees. The judgment of the trial court is AFFIRMED.