James O. OBERG, Appellee,

v.

Dean PHILLIPS and Clarence Aubrey, d/b/a/ Phillips-Aubrey Chevrolet Company, Appellants.

No. 52609.

Court of Appeals of Oklahoma, Division No. 1.

July 15, 1980.

Released for Publication by Order of Court of Appeals Aug. 14, 1980.

Cude & South by Arthur R. South, Lawton, for appellee.

Jennings, Robinson & Jennings by R. Keith Jennings, Lawton, for appellants.

BOX, Judge:

An appeal by the defendant-seller, Phillips-Aubrey Chevrolet Company, from a jury verdict for the plaintiff-buyer, James Oberg, in an action for the breach of a sales contract. The parties will be referred to as Buyer and Seller.

The Seller's sole proposition on appeal is that the trial court committed reversible error when it overruled the Seller's demurrer entered at the close of the Buyer's evidence. In reviewing an alleged error in overruling defendant's demurrer to plaintiff's evidence, an appellate court must consider the evidence in the light most favorable to the plaintiff. Where there is any evidence reasonably tending to establish a cause of action in the plaintiff or to sustain a jury's verdict and judgment, such judgment will be sustained on appeal unless contrary to the law. *Sunray Mid-Continent Oil Co. v. Tisdale*, 366 P.2d 614, 615 (Okl.).

This case involves the sale of a new Chevrolet automobile, and the parties agree that the sale is governed by the provisions of

Article 2 of the Uniform Commercial Code, Title 12A O.S.1971, § 2–101 *et seq.*, (hereinafter cited by U.C.C. section only). The Buyer sought to be released from the sales contract because after he accepted the car, he discovered numerous defects which he alleged the Seller did not repair as promised. He based his right to recovery upon Section 2–608, which allows a buyer to revoke the acceptance of nonconforming goods if the nonconformity "substantially impairs" the value of the goods to him. The Seller argues that the Buyer's evidence fails to state a cause of action under Section 6–608 because the nonconformities are trivial, as opposed to substantial, and can be easily repaired. The issue then is whether numerous defects, even if each were considered by itself to be trivial, can have a cumulative effect when not corrected, which substantially impairs the value of the goods to the buyer.

The parties cite us no Oklahoma cases which have decided what nonconformity in tendered goods will so substantially impair their value that a buyer is justified in revoking his acceptance of them, and we find none. The U.C.C. provides some guidance in comment 2 to Section 2–608, which states:

> Revocation of acceptance is possible only where the nonconformity substantially impairs the value of the goods to the buyer. For this purpose the test is not what the seller had reason to know at the time of contracting; the question is whether the nonconformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstances.

Revocation of acceptance has been allowed a buyer of a new automobile in other jurisdictions for various nonconformities. *See Pavesi v. Ford Motor Co.*, 155 N.J.Super. 373, 382 A.2d 954 (1978) (serious paint deficiency not corrected after three repaintings); *Zabriskie Chevrolet, Inc. v. Smith*, 99 N.J.Super. 441, 240 A.2d 195 (1968) (defective transmission); *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977)

(rattling in dash, seatbelt warning system activated itself, ineffective windshield-washer system, defective muffler, brakes squealed, accelerator and choke stuck, prolongation of fast idle, malfunction in heating unit and frequent stalling); *Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 370 A.2d 270 (1977) (defective transmission); *Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976) (car had to be towed in on five separate occasions for different defects); *Tiger Motor Co. v. McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969) (excessive oil usage, low gas mileage). In each of these cases. the courts found that there was at least one nonconformity which constituted a substantial impairment of the value to the buyer. This is consistent with the obvious intent of Section 2–608 that it is not every nonconformity which will justify revocation of acceptance. *See generally* J. White and R. Summers, *Uniform Commercial Code* § 8–3, at 308–09 (2nd ed. 1980).

Whether the nonconformity is a substantial impairment of the value of the car to the buyer is a question of fact to be determined by the trier of fact. *McGilbray v. Scholfield Winnebago*, 221 Kan. 605, 611, 561 P.2d 832, 836 (1977). What this Seller is basically asserting, however, is that if all of the nonconformities could be considered trivial by a reasonable man then as a matter of law, the buyer has no cause of action under Section 2–608.

The Buyer's evidence revealed that the car was purchased on September 13, 1976. The Buyer traded in a 1970 Dodge car and paid the balance of the purchase price in cash. The Buyer then took the new car home. When his wife got in to drive it, they discovered the driver's seat would not move forward or backward. They returned the car to the Seller the next day, and the seat was repaired. The Buyer next discovered other defects in the automobile and was told by the Seller to list the defects, bring the car in and leave it, and the defects would be repaired. The Buyer listed the following defects: the hood was loose, improperly aligned, and would not close

properly; the trunk leaked and was improperly aligned; the trim was missing on the left front door; the chrome was bent on the top of both doors and the paint was chipped above the chrome; the cruise control did not function properly; there were paint runs on certain portions of the body of the car; the trim was coming off a rear window; the glove box did not close properly nor firmly seal with the dashboard; the radio picked up electrical interference from the other electrical components of the car; the dimmer switch cover would not stay in place; the motor did not run smoothly at speeds between 35 and 45 miles per hour and the car would lose or gain speed even though constant pressure was applied to the accelerator; the car was advertised to get 15 miles per gallon of gas but only got 10; it was hard to start and once started stalled easily; the right front fender was dented and the paint was chipped; the fan in the heating assembly made a loud noise; the steering wheel was improperly set on the vehicle; the gear shift indicator did not properly show in which gear the car was engaged; the front windows were improperly sealed letting in wind noise and rain; and the chrome was loose and improperly mounted on the left rear sidelight. The Seller provided a loaner for the Buyer and kept the car for seven days. When the Buyer got the car back, he testified it ran a little better, but there were still problems. After this first time, the Buyer returned the car to the Seller on three more occasions where the Seller kept the car for periods approximating a week each. The Buyer testified that on at least twelve to fifteen other occasions the car was left with the Seller during at least part of a day to effectuate repairs. This course of dealing between the parties went on until November 15. At this point the Buyer's evidence shows the car still had many of the defects first listed and had developed still further defects, some of which were due to the efforts of the Seller to repair the existing defects. The Buyer contacted an attorney and though the evidence is somewhat unclear, viewed in the light most favorable to the Buyer, it appears he contacted the Seller and gave him a specified period of time to put the car in proper running order. When the Seller did not comply, the Buyer returned the car to the Seller's place of business and gave written notice of revocation of acceptance. This occurred on December 15, 1976. Some three weeks later the Seller contacted the Buyer and told him the car was repaired. The Seller requested the Buyer to take the car back, but the Buyer refused and filed this action. Thus, in the course of the three months in which the Buyer had possession of the vehicle, it was in the Seller's shop no less than thirty whole days and parts of twelve to fifteen more. Yet, the car was not repaired.

In *Durfee, supra*, the Supreme Court of Minnesota was presented with a fact situation very similar to the one presented here and stated with regard to the numerous defects at 262 N.W.2d at 354:

> The succession of minor defects, even if considered in total, perhaps might not constitute substantial impairment; however, in combination with the frequent stalling of Saab, plaintiff has shown substantial impairment. . . .

In *Stofman v. Keenen Motors Inc.*, 63 Pa.D. & C.2d 56, 14 U.C.C.Rep.Serv. 1252 (1973), a buyer revoked his acceptance of a new automobile after having the car in his possession for six weeks. The car vibrated continuously and stalled frequently. The seller tried repeatedly to repair the car but was unsuccessful. That court stated that "The question we must consider is just how long the buyer must wait and how many unfulfilled promises may be made before he is entitled to revoke his acceptance of an automobile and be returned the purchase price." 63 Pa.D. & C.2d at 59, 14 U.C.C. Rep.Serv. at 1254. In that case, as in *Durfee*, it was found that frequent stalling was in itself a substantial impairment which justified revocation of acceptance.

■ In the present case, the Buyer's evidence reveals that there was frequent stalling, and this alone from the authority set forth above could justify revocation of acceptance. However, we believe that in

cases such as this one, that a court need not search through the defects to find one it can classify as substantial to justify revocation of acceptance. The remedy should be available in a proper case even if each defect taken individually could be considered trivial. Thus, we hold where the buyer's evidence reveals numerous defects not repaired after repeated attempts that the cumulative effect of the defects and lack of repair can constitute a substantial impairment of the value of the goods to the buyer within the context of Section 2–608. See *Zoss v. Royal Chevrolet, Inc.*, 11 U.C.C.Rep. Serv. 527 (Ind.Super.Ct.1972).

Seller cites us *Razmus v. Thompson Lincoln-Mercury Co.*, 200 Pa.Super. 120, 224 A.2d 782 (1966), for the proposition that revocation of acceptance is not available to a buyer for trivial defects alone. We agree, but believe the holding in *Razmus* is consistent with the views expressed in this opinion. In that case, the buyer was confronted with a loud thumping noise and excessive smoke pouring from the exhaust shortly after he took possession of the vehicle. He contacted the dealer, returned the car and within minutes the repairman found the trouble to be two loose engine mountings which caused a misalignment of the drive shaft. The car was repaired immediately and the evidence showed no further difficulties with the vehicle. In a case such as that, revocation should not be allowed, but the present case is not comparable for the reason that the defects were not repaired. *It is the combination of defects and inability to obtain proper adjustments in a reasonable time that provides the criteria for a jury finding of substantial impairment.*

■ The Seller asserts that because the defects were repairable, revocation of acceptance is not necessary or justifiable. While a seller is permitted to cure defects, it must be "seasonably" done. § 2–608(1)(a); *Also see* § 2–508. The U.C.C. provides that "a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." § 1–204(2). "An action is taken 'seasonably' when it is taken within the time agreed or if no time is agreed at or within a reasonable time." § 1–204(3). What is a reasonable time depends on all the circumstances and is a question of fact. *See* § 2–508, Comment 3.

■ The Seller, also, argues in essence that because the car was under a 12,000 mile or 12 month warranty, it had the warranty period to remedy defects. Although the code provides that a seller may cure defects (§ 2–508), the right to cure is not a limitless one to be controlled by the will of the seller, but should more closely approximate the expectations of both parties. *Zabriskie, supra*, 99 N.J.Super. at 458, 240 A.2d at 205.

■ In this case the Buyer's evidence provided a basis for the jury to find a substantial impairment in the value of the car to the Buyer. In addition, the trial court's jury instructions very carefully delineated what defects could give rise to a right to revoke acceptance. The instructions emphasized that the defects must produce substantial impairment not merely trivial or annoying impairment. The jury was allowed to view and to drive the vehicle in question prior to reaching a verdict. And this was at a point in time where the Seller contended the car was completely repaired. Yet, the jury found that the defects substantially impaired the value of the car to the Buyer. We find that the evidence substantiates the verdict and is not contrary to the law. Thus we affirm.

AFFIRMED.

REYNOLDS, P. J., and ROMANG, J., concur.