Harvey JOHANNSEN, Respondent,

v.

MINNESOTA VALLEY FORD TRACTOR CO., INC., Appellant (50647),

and

Appeal of Ford Motor Company, Inc., Appellant (50646).

Nos. 50646, 50647.

Supreme Court of Minnesota,
En Banc.

April 10, 1981.

Blethen, Gage, Krause, Blethen, Corcoran, Berkland & Peterson, Bailey W. Blethen and Randall C. Berkland, Mankato, for Minnesota Valley Ford Tractor, Inc.

Dorsey, Windhorst, Hannaford, Whitney & Halladay, Craig A. Beck and Jill A. Smith, Rochester, for Ford Motor Co., Inc.

Christian, Slen, Savelkoul, Johnson, Broberg & Kohl, Henry J. Savelkoul and Phillip A. Kohl, Albert Lea, for respondent.

## OPINION

PETERSON, Justice.

The defendants, Ford Motor Co. and Minnesota Valley Ford (dealer), appeal from the judgment entered in favor of the plaintiff, Harvey Johannsen, the buyer of a defective tractor manufactured by Ford and sold to him by the dealer. After a trial in which the jury found that Johannsen had effectively revoked his acceptance of a Ford Model 9700 tractor (9700), the district court entered judgment for the plaintiff in the amount of the purchase price of the tractor less an offset for use and depreciation. Defendants appeal from the order denying post-trial motions for judgment notwithstanding the verdict or a new trial and also appeal from the judgment. We affirm.

The plaintiff revoked his acceptance of the 9700 tractor pursuant to Minn.Stat.

§ 336.2–608(1)(b) (1980)[1] after he experienced mechanical problems that substantially interfered with its intended use on his 330-acre farm. On July 13, 1977, plaintiff, together with his wife, went to the premises of the dealer to pick up his 1974 Ford Model 9600 tractor (9600), which had been taken to the dealer for repairs. Johannsen had experienced a number of problems with the fourth gear and hydraulic system of his 9600. The tractor had jumped out of fourth gear on a number of occasions while Johannsen was plowing. Johannsen expressed his concern to Brian Gaard, one of the dealer's employees, that the 9600 would again jump out of gear.

Gaard told Johannsen that the transmission of the new 1977 Ford Model 9700 had been redesigned to avoid the transmission defects of the 9600 and that he could solve his tractor transmission problems by purchasing a new 9700 for $26,000. Gaard did not tell Johannsen that Ford had sent a letter to its tractor dealers in May of that year detailing transmission defects in the 9700. Dealers were informed that some 9700's jumped out of fourth and/or eighth gear. They were instructed to check all 9700's in stock for the defect and to sell defective tractors only if they would lose a sale. Johannsen purchased a 9700 from the dealer and traded in his 9600.

The dealer delivered the tractor to Johannsen's farm in late July. The tractor jumped out of fourth gear upon its first use, and at about the same time the frost plugs blew out of the engine, causing a loss of all of the coolant. The dealer sent a repairman to plaintiff's farm on that day who told Johannsen to see the dealer about the transmission defect. On August 3, 1977, the tractor developed a fuel restriction problem and a hydraulic leak, which made it difficult to lower the implements into the soil. The dealer informed Johannsen that it could not fix the hydraulic defect until replacement parts became available in April, 1978. Johannsen told every serviceman who called at his farm that he wanted to return the tractor.

On September 19, 1977, Johannsen, by his attorney, formally notified the dealer in writing of his revocation of acceptance due to transmission, hydraulic and fuel line defects, and he directed the dealer to pick up the tractor immediately.

Johannsen continued to use the tractor after the written revocation and called the dealer on September 28 because the tractor continued to exhibit the same problems. The dealer made service calls on September 28, October 2, and October 9 in response to Johannsen's complaints. Ray Chaik, an employee of the dealer, told Johannsen that he could finish his fall work and bring the tractor in for winter servicing. Johannsen used the tractor for a total of 120 hours but was able to plow or disk only 150 acres of his farm with it. Approximately 90 of those hours were put on the tractor after the revocation letter of September 19. Johannsen put the tractor in storage in late October, 1977.

The defendants contend that the plaintiff did not effectively revoke his acceptance of the 9700 tractor because (1) he did not allow the defendants to attempt to cure the defects, (2) the defects did not substantially impair the value of the tractor, (3) the plaintiff did not revoke his acceptance of the tractor seasonably, and (4) the plaintiff continued to use the tractor after revocation of acceptance.

---

1. The sections of Minn.Stat. § 336.2–608 (1980) which are relevant to this appeal state:

   (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it . . . .

   (b) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

   (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

   (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

■ 1. The defendants, although acknowledging that the seller's right to cure pursuant to Minn.Stat. § 336.2–508(2) (1980)[2] is expressly limited by the language of the statute to cases in which the buyer rejects a non-conforming tender, argue that the right to cure should be incorporated into Minn.Stat. § 336.2–608(3) (1980)[3] governing revocation of acceptance.[4] It is our view that any right to cure should be limited to cases in which the defects are minor, and we hold that the seller has no right to cure defects which substantially impair the good's value.

■ 2. We reject defendants' contention that the jury's finding that the defects substantially impaired the value of the tractor to plaintiff is not supported by the evidence. In *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 353–54 (Minn. 1977), we set forth guidelines to establish the substantial impairment requirement of Minn.Stat. § 336.2–608(1):

> [T]wo respected commentators suggest that the test ultimately rests on a commonsense perception of substantial impairment, akin to the determination of a material breach under traditional contract law. White & Summers, Uniform Commercial Code, § 8–3, p. 257. The cases that involve revocation of acceptance of defective new automobiles are amendable to classification by this practical criterion. Minor defects not substantially interfering with the automobile's operation or with the comfort and security it affords passengers do not constitute grounds for revocation. On the other hand, if the defect substantially interferes with operation of the vehicle or a purpose for which it

was purchased, a court may find grounds for revocation. Indeed, substantial impairment has been found even where the defect is curable, if it shakes the faith of the purchase in the automobile.

Substantial evidence supports the jury's finding that the transmission and hydraulic defects substantially impaired the value of the tractor to plaintiff. He specifically purchased the 9700 to avoid problems with the essential fourth gear which he had experienced with the 9600. As a result of the defects, he was only able to use the tractor on 150 acres of his 330-acre farm. Plaintiff testified that due to the defect it took him two weeks to plow 50 acres of sweet corn ground, a task that should have taken less than 4 hours to complete. Under these circumstances, the jury's finding is supported by the evidence.

■ 3. We likewise reject defendants' contention that plaintiff did not revoke his acceptance within a reasonable time after discovering the defect. The issue of what constitutes a reasonable time within the context of revocation of acceptance is a jury question that depends on the facts and circumstances of the case. We hold that the jury's finding that plaintiff's revocation was timely is supported by the evidence because it could have reasonably concluded that plaintiff gave notice within a reasonable time after discovering through his use of the tractor that it would not adequately perform the tasks for which it was purchased.

■ 4. Defendants additionally contend that plaintiff's use of the tractor after he gave written notice of revocation of accept-

---

**2.** Minn.Stat. § 336.2–508(2) (1980) provides: "Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

**3.** Minn.Stat. § 336.2–608(3) (1980) provides: "A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." The defendants contend that one of the duties

imposed upon *revoking* buyers by this statute is the duty to allow the seller the right to cure under Minn.Stat. § 336.2–508(2) which confers upon sellers the right to cure when a buyer *rejects* a non-conforming tender.

**4.** Commentators are divided on the issue of whether the seller has a right to cure after the buyer revokes his acceptance. *See e. g.,* J. White & R. Summers, *Uniform Commercial Code,* 293 (1980) (no right to cure); *contra* 3 S. Williston, Williston on Sales 119 (Supp.1980).

ance constitutes a second acceptance. Although the revoking buyer's continued use of defective goods may be wrongful under some circumstances,[5] we think that there can be no blanket rule which prohibits such a buyer from continuing to use the goods. A blanket rule prohibiting a revoking buyer from continuing to use the goods would contravene the code's rule of reasonableness and its underlying purpose of modernizing commercial transactions. We agree with those jurisdictions that have so held. *See Minsel v. El Rancho Mobile Home Center, Inc.,* 32 Mich.App. 10, 188 N.W.2d 9 (1971). *Fablok Mills, Inc. v. Cocker Machinery & Foundry Co.,* 125 N.J.Super. 251, 310 A.2d 491 (Super.Ct. App.Div.1973), *cert. denied,* 64 N.J. 317; 315 A.2d 405 (1973).

The reasonableness of the buyer's use of a defective good after revocation is a question of fact for the jury that is to be based on the facts and circumstances of each case. Several factors that the jury may consider include the seller's instructions to the buyer after revocation of acceptance; the degree of economic and other hardship that the buyer would suffer if he discontinued using the defective good; the reasonableness of the buyer's use after revocation as a method of mitigating damages; the degree of prejudice to the seller; and whether the seller acted in bad faith.

We hold, limited to the facts and circumstances of this case, that the jury could find that plaintiff's continued use of the 9700 tractor was reasonable and did not constitute a waiver of his revocation of acceptance. The defects in the 9700 tractor were major. Employees of the dealer knew that Johannsen specifically purchased the 9700 to avoid the transmission defect in the 9600, knew of the possibility of the identical defect in the 9700, and yet they led Johann-

sen to believe that buying the 9700 would solve all of his tractor transmission problems. In addition, evidence in the record tends to show that Johannsen used the tractor only to perform necessary tasks.

We note that the trial court, based upon expert testimony, allowed the defendants a setoff for use and depreciation of the tractor. Allowing the seller to recover for the revoking buyer's use of the tractor best serves the equitable principle incorporated into the code through Minn.Stat. § 336.1–103 (1980)[6] that a party seeking rescission of a contract must return or offer to return that which he had received under it in order to restore the parties to the positions that they occupied prior to the transaction. *See Village of Wells v. Layne-Minnesota Co.,* 240 Minn. 132, 138, 60 N.W.2d 621, 625 (1953).

5. Defendants contend that the trial court improperly excluded for lack of foundation a warranty which limited a buyer's remedies to repair or replacement. Defendants asserted that plaintiff had been given a copy of Ford's standard warranty, but they were unable to produce an executed copy of the warranty. Plaintiff denied that he had executed any such warranty. We conclude that the trial court did not err in the exclusion of the alleged warranty.

The instructions given to the jury by the trial court are in conformity with the law as we have stated it. Defendants' other claims of error on evidentiary matters do not require discussion.

Affirmed.

---

5. Minn.Stat. § 336.2–602(2)(a) (1980) provides that any exercise of ownership by a rejecting buyer is wrongful as against the seller. Defendants contend that because section 336.2–608(3) imposes upon revoking buyers the same rights and duties as if they had rejected the goods, that a revoking buyer's continued use of goods is always wrongful.

6. Minn.Stat. § 336.1–103 (1978) provides: "Unless displaced by the particular provisions of this Act, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."