Nathan GAPPELBERG, Appellant,

v.

Neely LANDRUM d/b/a the Video Station, Appellee.

No. 05–82–00575–CV.

Court of Appeals of Texas, Dallas.

June 21, 1983.

Rehearing Denied Aug. 1, 1983.

Rodney Gappelberg, Wilson, Berry, Jorgenson & Fuqua, Dallas, for appellant.

Charles W. Pauly, Shank, Irwin, Conant & Williamson, Dallas, for appellee.

Before STOREY, GUILLOT and STEWART, JJ.

STOREY, Justice.

This is a sale of goods case under the Uniform Commercial Code presenting the novel question of the duration of the right to cure after acceptance of goods without knowledge of any defects. The seller, Landrum, contends that the right to cure by replacement outlasts the buyer's right to revoke acceptance of the original, defective goods. We conclude that there is a right to cure by replacement apart from the right to repair the original product and that this right survives the substantial impairment of the value of the original good as long as the right is asserted within a reasonable time after notification of revocation by the buyer. Accordingly, we affirm.

The case was tried before the court on extensive stipulated facts. In exchange for Gappelberg's used Advent-brand big-screen television and $2,231.25, Landrum sold him a new Advent Model VB125 big-screen television. Landrum represented that the Advent Model VB125 was the best television set he had. The same day of the purchase Gappelberg informed Landrum that the screen was damaged. Within the next two days, several other defects surfaced: an unclear picture due to a faulty color convergence board, a red spot on the screen, a chipped mirror, a slight tilt in the screen, and minor damage and scratches on surfaces. Landrum or his service representatives repaired some of these defects over the next two weeks. Three weeks after the sale, the television stopped functioning altogether; Gappelberg notified Landrum of the problem. The service representative

told Gappelberg that the television would need to be taken to the repair shop. However, despite a number of calls to Landrum, the television was not removed for the repairs, although Landrum offered assurances that he would repair the set or replace it. On that day or the following day, Gappelberg requested the return of consideration and asked the service representative to pick up the set but not to repair it because he would not accept it or a replacement. A day or two later, Landrum offered to replace the set with another new one of the same make and model. At the time of the stipulated revocation of acceptance, Landrum had not repaired the color convergence problem, the red spot on the screen, or the slight tilt of the screen. The trial court denied Gappelberg's relief by holding that while the power failure and convergence problem substantially impaired the value of the set, Gappelberg prevented Landrum from curing the nonconforming good by his refusal to accept a replacement set.

■ While both parties agree that Gappelberg's revocation of acceptance was proper under Tex.Bus. & Com.Code Ann. § 2.608(a)(2) (Vernon 1968) (Tex.UCC),[1] Gappelberg contends that Landrum was not entitled to cure by replacing the television set because the right to cure under Tex.Bus. & Com.Code Ann. § 2.508 (Vernon 1968)[2] is limited to cases of rejection and is not available after revocation of acceptance under § 2.608. Consequently, Gappelberg concludes that he was not obligated to permit Landrum to replace the defective television with a new one after he had already justifiably revoked acceptance of the original set he agreed to buy.

Citing authority from other jurisdictions, Landrum replies that the seller should always have an opportunity to cure non conforming goods within a reasonable time of notification concerning a defect. More specifically, Landrum contends that the seller has a right to cure after revocation of acceptance because the right to cure is incorporated into § 2.608(c) because "[a] buyer who so revokes has the same rights and *duties* with regard to the goods ... as if he had rejected them" and one of these *duties* obligates the buyer to allow the seller to cure.[3]

In the absence of guidance from Texas authorities, we have examined the authorities from other states and found that the greater weight of authority provides support for the conclusion that the right to cure *by repair* ends when the buyer justifi-

1. Revocation of Acceptance in Whole or in Part

(a) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it

(1) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(b) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(c) A buyer who so revokes has the same right and duties with regard to the goods involved as if he had rejected them.

2. Cure by Seller of Improper Tender or Delivery; Replacement

(a) Where an tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(b) Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.

3. The same argument was made in a foreign case relied upon by Gappelberg: *Johannsen v. Minnesota Valley Ford Tractor Co.,* 304 N.W.2d 654, 657 (Minn.1981) (en banc). Rejecting the argument, the court held that the seller has no right to cure defects which substantially impair the value of the good. In that case, the seller had not tendered a brand new replacement for the defective tractor. A commentator had previously recognized the argument Landrum makes. Note, 6 Rutgers-Camden L.Rev. 387, 414 (1974).

ably exercises his right to revoke acceptance of goods due to a substantial impairment in their value. *See Conte v. Dwan Lincoln-Mercury, Inc.*, 172 Conn. 112, 374 A.2d 144 (1976); *Johannsen v. Minnesota Valley Ford Tractor Co.*, 304 N.W.2d 654 (Minn.1981) (en banc); *Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 370 A.2d 270 (1977); *Pavesi v. Ford Motor Co.*, 155 N.J.Super. 373, 382 A.2d 954 (Chancery Div.1978); *Erling v. Homera*, 298 N.W.2d 478 (N.D.1980); *Oberg v. Phillips*, 615 P.2d 1022 (Okl.App.1980); *Jorgensen v. Pressnall*, 274 Or. 285, 545 P.2d 1382 (1976) (en banc).

The purpose of the "substantial impairment" requirement of § 2.608 is to preclude revocation for defects that may be easily corrected. *Rozmus v. Thompson's Lincoln-Mercury Co.*, 209 Pa.Super. 120, 224 A.2d 782, 784 (1966); Note, *Uniform Commercial Code—Sales: Sections 2–508 and 2–608 Limitations on the Perfect Tender Rule*, 69 Mich.L.Rev. 130 (1970). It stands to reason that once repairs have been unsuccessfully attempted, a virtually irreparable defect would give rise to a right to revoke acceptance due to a substantial impairment in the value of the defective good. *See Johannsen*, 304 N.W.2d at 657; *Pavesi*, 382 A.2d at 955–57; *Erling*, 298 N.W.2d at 482; *Jorgensen*, 545 P.2d at 1385. In fact, "[i]t is the combination of defects and inability to obtain proper adjustments in a reasonable time that provides the criteria for a jury finding of substantial impairment." *Oberg v. Phillips*, 615 P.2d 1022, 1026 (Okl.App. 1980) (emphasis omitted). Here, the parties agree that there was a proper revocation and submit to the court the question whether cure by replacement (as opposed to cure by repair) is available after revocation.

■ "One policy of the Code is to encourage the parties to work out their differences and so to minimize losses resulting from defective performance."[4] White & Summers, Uniform Commercial Code § 8–2,

at 299 n. 23 (1980), *quoted in Conte v. Dwan Lincoln-Mercury, Inc.*, 374 A.2d at 149. More specifically the policy of § 2.508, recognized in the official comment, is "to avoid injustice to the seller by reason of a surprise rejection by the buyer." Tex.Bus. & Com.Code Ann. § 2.508 official comment 2 (Vernon 1968). Under certain circumstances, even though a buyer may be justified in revoking his acceptance of goods which the seller has been unable to repair, the seller retains the right to cure by replacing the defective goods. *See Asciolla v. Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 370 A.2d 270, 274 (1977). We conclude that the buyer may revoke acceptance of the defective product due to an inability to repair, but then the buyer is obligated to permit the seller to replace the product with a brand new one within a reasonable time of notice of revocation. *See generally* Note, *U.C.C. Section 2–508: Seller's Right to Cure Non-Conforming Goods*, 6 Rutgers-Camden L.Rev. 387, 411–14 (1974). *See also Ramirez v. Autosport*, 88 N.J. 277, 440 A.2d 1345, 1351–52 (1982).

The test that the courts have applied to rule on the propriety of revocation requires a substantial impairment in the value of the goods. This substantial impairment, in turn, has depended upon such factors as the ease of correcting the defect and the seller's diligence in attempting these repairs. *See, e.g., Don's Marine, Inc. v. Haldeman*, 557 S.W.2d 826, 829–30 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Because these factors relate only to the repair of defects, revocation for ineffective repairs should not preclude an attempt to cure by replacement. Therefore, the seller's right to replace should survive a buyer's revocation following ineffective repairs.

■ Moreover, the application of the right to cure to revocation cases is justified by the frequent difficulty which the courts demonstrate in attempting to distinguish between rejection and revocation. *See, e.g., Don's Marine*, 557 S.W.2d at 829–30. In

---

4. There is a further policy consideration beyond the spirit of the Code itself which persuades us that cure by replacement should be authorized. Recognizing that the buyer has the right to elect remedies outside the code, it would seem appropriate that a seller should be afforded a reasonable opportunity to mitigate the damages flowing from the transaction.

order to avoid the difficult issue of acceptance, the cases often hold in the alternative, that the buyer either properly rejected or justifiably revoked. *Id.* *Shelton v. Farkas,* 30 Wash.App. 549, 635 P.2d 1109, 1113 (1981). The pains that legal scholars experience with the distinction surely warrant a broad interpretation of the "duties" of the buyer under § 2.608(c) in case of a revocation of acceptance. *See* Schmitt & Frisch, *The Perfect Tender Rule—An Acceptable Interpretation,* 13 U.Toledo L.Rev. 1375 (1982).

The courts that discuss the relationship between the seller's right to cure and the buyer's right to revoke were not presented with such a generous offer as Landrum's offer to replace. It is easier to understand the motivation of a buyer who demands replacement in the face of ineffective repairs than the whim of the buyer who wants his used trade-in product returned to him when he could have a brand new product. Section 2.508 is aimed at avoiding this sort of "surprise rejection" which effectuates a "forced breach." *See* Tex.Bus. & Com.Code Ann. § 2.508 official comment (Vernon 1968). "If a merchant sells defective goods, the reasonable expectation of the parties is that the buyer will return those goods and that the seller will repair or replace them." *Ramirez v. Autosport,* 88 N.J. 277, 440 A.2d 1345, 1351 (1982).

Gappelberg relies heavily upon *Johannsen v. Minnesota Valley Ford Tractor Co.,* 304 N.W.2d 654 (Minn.1981) (en banc), in which the Minnesota Supreme Court held that despite the language in § 2–608(3) regarding the buyer's post-revocation duties, the seller has no right to repair defects that substantially impair the value of the goods to the buyer because the right to cure is limited to minor defects. The reasoning of *Johannsen* is not applicable to an offer to replace the defective product. The severity of the defect in the original product should have little if any influence upon the value of the replacement product, unless the confidence of the buyer in a brand or line of products is justifiably undermined by the nature of the defect.

A survey of the cases reveals three lines of cases: (1) the seller's right to cure [by repair] ends where the buyer's right to revoke begins, *see, e.g., Johannsen,* 304 N.W.2d at 657; (2) the seller has no right to cure [by repair] in a case of revocation of acceptance unless § 2.608(a)(1) applies (that is, when the buyer accepts with knowledge of the defect and the seller agrees to repair); *see, e.g., Werner v. Montana,* 117 N.H. 721, 378 A.2d 1130, 1136 (1977); and (3) the seller's right to cure by repair is cut off by the subverted confidence of the buyer in the reliability of a major purchase, such as a car or a mobile home, *see, e.g. Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super. 441, 240 A.2d 195, 205 (1968); *Asciolla,* 370 A.2d at 274. Landrum's offer to replace does not fall into any of these three categories, and, therefore, in the spirit of the Code,[5] we conclude that following three weeks of diligent attempted repairs, Landrum was entitled to replace the television when faced with the unexpected demand of Gappelberg for the return of consideration when the television stopped operating completely.[6]

In view of our conclusion that Landrum had a right to cure by replacement, Gappelberg is not entitled to the damages he claims under Tex.Bus. & Com.Code Ann. § 2.711 (Vernon 1968). *See id.* official comment 1.

The judgment is affirmed.

---

**5.** *Cf. T.W. Oil, Inc. v. Consolidated Edison Co.,* 57 N.Y.2d 574, 457 N.Y.S.2d 458, 463–465, 443 N.E.2d 932, 937–39 (1982) (applying general policy of the Code to interpret UCC § 2.508(2)).

**6.** This right to cure must comply with the § 2.508 requirements of notification, timeliness, and reasonableness. Factual compliance with these requirements was not raised by appellant but the trial judge's implied findings of compliance are supported by the stipulations of evidence.