**VERNON GERMAIN, Plaintiff**
**v.**
**BARBARA CROWN, Defendant**

Civil No. 188-1970

District Court of the Virgin Islands

Div. of St. Croix

April 11, 1973

FRANK PADILLA, ESQ., Frederiksted, St. Croix, V.I., *for plaintiff*

ISHERWOOD & COLIANNI, ESQS., Christiansted, St. Croix, V.I., *for defendant*

YOUNG, *Judge*

### MEMORANDUM OPINION AND JUDGMENT

The trial of this automobile accident case was held December 5, 1972. At commencement of trial, plaintiff advised the Court that one of his most important medical witnesses failed to respond to a subpoena. He was then permitted to put on his case with the right to continue the trial for a further hearing to bring forth the evidence of the errant medical witness. Plaintiff's case consisted of the testimony of three witnesses, substantiated in part by bills and receipts. Defendant did not put in any defense, but merely cross-examined plaintiff's witnesses.

The adjourned trial hearing was held March 25, 1973, at which time plaintiff offered the testimony of the doctor who missed the earlier date. He testified as to his services to plaintiff in July 1972—about two years after the initial injury.

The facts of this case are simple and unopposed. The accident occurred April 9, 1970 on North Highway in the

vicinity of Pelican Cove. Plaintiff was driving his 1966 Opel Sedan toward Christiansted. Defendant was driving her 1969 Sunbeam in the opposite direction. When defendant approached the side road to Pelican Cove Beach Club, she stopped before making a righthand turn across the on-coming lane. In a statement made by her after the accident, she stated that she thought all on-coming traffic had been cleared when she proceeded to turn right across plaintiff's lane. She did not see plaintiff and her right front fender made impact with plaintiff's right front door. Plaintiff's door flew open and he fell out, injuring his left arm and right knee and suffering lacerations to his face. Plaintiff was taken to the hospital, but was released that afternoon after emergency treatment.

There is little question that the accident was caused by defendant. In the statement which she made after the accident, she remarked that "in my opinion, the cause of the accident was my inexperience with left-hand side driving and consequently I was at fault for the accident because I did turn into his [plaintiff's] lane and hit him." She then went on to state certain facts which negated any contributory fault by plaintiff. She could not tell what speed he was traveling since she actually did not see him.

At a pretrial conference, attorneys for both sides submitted pretrial statements narrowing the issues down to (1) cause of the accident, and (2) extent of damages sustained by plaintiff. Defendant's attorney did, however, raise the additional issue of contributory negligence, although it was never pressed at trial.

At the adjourned hearing, the doctor who attended plaintiff in June 1972 gave testimony pertaining to an alleged permanent injury to plaintiff's right knee. However, his testimony was clear that, in his opinion, plaintiff's complaint in 1972 regarding a pain in the right knee was probably not connected with the automobile accident in 1970.

Although plaintiff is suing for $75,000 damages, his proof consisted of receipts showing the payment of approximately $1,000 in car rentals, testimony of having spent about $300 in taxi fares, a $25 towing charge, the total loss of an $85 wrist watch, and damage to an $80 suit of clothes which was torn when he was thrown from the car. He also introduced into evidence a hospital bill for $37.45. He has not received any bills from the doctors.

The damages claimed in this case are threefold: (1) bodily injury; (2) property damage; and (3) loss of earnings. An interesting issue in this case, but which was not explored or developed by counsel, is whether plaintiff should be held to contributory negligence as to the bodily injury claims for failing to have himself secured in the car by the use of a safety belt.

### I— Property Damage

As to plaintiff's claim for property damage, I find that he purchased the Opel secondhand from Tonn Hooper Motors at a price of $850. Although there was some evidence of a small salvage value, I will accept the $850 as a fair market value of the property at the time of its total destruction. There would therefore be a property damage claim of $850 with respect to plaintiff's automobile. In connection with the property damage, plaintiff claims approximately $959.16 for car rentals and $300 for taxifares. He started renting an automobile two days after the accident and continued to rent automobiles off and on for the next eight months.

Plaintiff testified that at the time of the accident, he had over $1,000 in savings. He learned within a few days of the accident that his car was almost a total wreck and beyond reasonable repair. Under such circumstances, I question the reasonableness of renting an automobile for such a prolonged period of more than eight

months, expecting to charge the defendant with the full cost of such rentals. There should be a key to this question. Plaintiff is entitled to some reimbursement for loss of use of his automobile and for a substitute vehicle, see Buchanan v. Leonard, 127 F.Supp. 120 (D. Colo. 1954), but there should be some reasonable limit to the time within which defendant should be chargeable with the expenses of such substitute car rental. Terrebonne v. Toye Bros. Yellow Cab Co., 64 S.2d 868 (two weeks held to be reasonable). With the shipping problems in the Virgin Islands, and the lack of local automobile dealers with adequate inventory of parts, I would say that a month would be a reasonable period within which the aggrieved party may charge to the party in fault out-of-pocket expenses for taxi and car rentals. Plaintiff rented automobiles at $12 and at $15 per day. Thirty days at the mean average of $13.50 per day would be $405.00. Plaintiff also claims (without proof), out-of-pocket expenses for taxicab fares of $300. There is no evidence as to the times when taxicabs were used. With such lack of proof, I must either disallow the claim altogether or cut it down drastically. I will give plaintiff the benefit of a favorable choice and allow plaintiff recovery in the amount of $600 for car rental and taxicab expenses. Plaintiff's only other property damage claims were supported only by his testimony as to the alleged total destruction of his wrist watch and a torn suit. Without some reasonable substantiation I must hold that he has not sustained his burden of proof as to such claims. Even an insurance adjuster responding to a personal property floater policy would require some evidence of the alleged damage or loss.

## II—Bodily Injury, Pain and Suffering

The medical specials amount to $37.45, substantiated by a statement from Charles Harwood Memorial Hospital.

On the date of the accident, the hospital charged plaintiff $5.00 for the emergency room and $1.45 for medicine. The next day, the hospital charged plaintiff $25.00 for X rays, $1.00 for dressings and $5.00 for the use of the emergency room.

Plaintiff was never hospitalized. He was attended to by several doctors. Dr. Galiber testified that he received some injury to his left elbow and right knee and suffered minor lacerations on his face. About two months after the accident, plaintiff returned to the surgical clinic and complained of a continuing pain in his left knee. However, X rays showed no bone damage. There was probably injury to the ligaments or muscles. About two years after the accident, plaintiff returned to the orthopedic clinic and complained of pains to his right knee. The medical report shows there was generalized swelling and tenderness about the knee joint. X rays were taken of the right knee, but there was no evidence of injury and radiographically the examination of the patient showed no change in plaintiff's original condition immediately following the accident. It was with reference to the complaint of pains in the right knee that Dr. McDonald was called upon to give evidence. As I mentioned earlier, the thrust of his testimony was that it was doubtful that the pain mentioned by plaintiff in the right thigh or knee was connected in any way to the injury caused by the 1970 accident.

 The medical specials are $37.45. I find that there was no permanent injury or disability. We are thus left with the determination of an award for pain and suffering. There were no broken bones—only minor contusions of the face and bruises of the left elbow, right knee and thigh. There was some pain and suffering, but the evidence does not support any great amount of pain and suffering. We have a young man, approximately 35 years of age, in apparent good health. He was able to get around in an auto-

mobile within two days after the accident, he was never confined to bed for any period of time and the injuries are not those normally associated with great pain. There was no third-party evidence to substantiate that plaintiff actually suffered any great pain or suffering. I would have to place a low value on this item of damages; no more than $500.

### III—Loss of Earnings

■ Plaintiff testified that he was an insurance salesman and that he earned $187 per week. The only evidence as to earnings was plaintiff's own testimony. He admitted that he was on a commission basis and that $187 per week was approximately his average weekly earnings. The insurance agency did, however, pay him a fixed stipend of $68 per week. Presumably that was to cover his car expenses. He also admitted that he did not have an insurance salesman license at the time of the accident. No evidence was introduced from his alleged employer. Again, on cross-examination, he stated that he was unable to work for five weeks and therefore was deprived of $119 per week, which was presumably the amount which he was able to earn from commissions. Again, with round figures, I can find no more than $600 loss of earnings and that is giving him the benefit of a very weak proof.

■ I conclude my findings of facts by finding no contributory negligence on the part of plaintiff with regard to the automobile accident. Although plaintiff did not use a seat belt, I do not find such lack of the use of a seat belt as contributory negligence to bar recovery for the personal injuries. That issue was not raised in the trial, nor in the pleadings, nor in the arguments of counsel. I do not even know if the plaintiff's 1966 Opel had a seat belt. There is no requirement in the laws of the Virgin Islands

for seat belts, although modern cars are now required by Federal law to have seat belts. For this particular car and for this particular accident, I do not find contributory negligence in the lack of the use of the seat belt, but this is not to infer that in another instance involving a modern car with seat belts, that the failure to use a seat belt would not be characterized as contributory negligence.

The various items of bodily injuries, medical specials, property damage and loss of earnings amount to $2,612.45.[1] Judgment will be entered for that amount, together with attorney's fees of $800.00, making a total recovery for plaintiff in the amount of $3,412.45.

## JUDGMENT

For the findings of facts, conclusions of law contained in the foregoing Memorandum Opinion, Judgment is hereby given to plaintiff in the amount of $2,612.45, together with plaintiff's costs and attorney's fees in the amount of $800.00.

---

[1] $ 850.00 —Loss of automobile
 25.00 —Towing charge
 600.00 —Car rentals and taxifares
 37.45 —Medical specials
 500.00 —Pain and suffering
 600.00 —Loss of earnings

$2,612.45