155 N.J. Super. 373 (1978)
382 A.2d 954
RONALD PAVESI, PLAINTIFF,
v.
FORD MOTOR COMPANY AND LARSON FORD, INC., CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 10, 1978.
*375 Mr. Mark Silber for plaintiff.
Mr. Joseph H. Kott for defendant Ford Motor Company (Messrs. Pitney, Hardin & Kipp, attorneys).
Mr. Harold A. Schuman for defendant Larson Ford, Inc. (Messrs. Haines, Schuman & Butz, attorneys).
FURMAN, J.S.C.
Plaintiff, a school teacher, purchased a new Ford car, a 1975 model, from defendant dealer, Larson Ford, on October 5, 1975. He brought this action for rescission on March 7, 1977. He has retained possession of the car.
Over the 17-month interval between the purchase of the car and the filing of the complaint the car was repainted three times by Larson Ford without cost to plaintiff. Each time Larson Ford loaned plaintiff a comparable replacement. Plaintiff asserts, and this court so finds, that a motor vehicle is a necessity for him for transportation to work and for *376 other uses. See South Burl. Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151, 172-173 (1975) (noting society's increasing dependence on motor vehicle transportation); Streeter v. Brogan, 113 N.J. Super. 486, 492 (Ch. Div. 1971) (characterizing a motor vehicle as a necessity for a large segment of the population).
At the time of delivery of the car to plaintiff some paint was chipped in front. It was dark. Plaintiff did not observe the defect until the next day, when he demanded his money back or a new car from Larson Ford. Larson Ford refused in accordance with the firm policy of defendant manufacturer, Ford Motor Company, to insist upon the customer's acquiescence in repair of any defect, rather than reimbursement of the purchase price or tender to him of a substitute new car. Plaintiff so acquiesced.
The body shop manager of Larson Ford noted a slight differential in color between the front and rear of plaintiff's new car. He concluded that the car had a replacement front end, including hood and fenders, as shipped by Ford Motor Company. Under his direction the front end was stripped down to the metal with the use of a solvent and repainted.
Further chipping and peeling occurred after several weeks. Again plaintiff demanded a rescission and again was advised the car would be repainted. This time Larson Ford stripped down and repainted the entire car.
By July 1976 serious paint defects had redeveloped. Adhesion of the paint was so poor that it peeled manually. Plaintiff for the third time asked Larson Ford for return of his money, offering an adjustment because of his nine months' use of the car, or, alternatively, a new car. Larson Ford refused. The entire car was sandblasted down to the metal, repainted and returned to plaintiff.
A substantially successful adhesion of paint was accomplished. Nevertheless spot painting and repairs to the upholstery and other parts of the car damaged by the sandblasting are still required. For several months prior to the institution of this action plaintiff negotiated with Larson *377 Ford, first by himself and then through an attorney, for a settlement or adjustment, such as a credit towards purchase of a new car. He was offered such a credit but rejected it as inadequate. He has continued to drive his car but its appearance and value have been marred for him because of the recurrent paint defects. He remains dissatisfied and frustrated, as he has been since the day after delivery. As commented in Zabriskie Chevrolet, Inc. v. Smith, 99 N.J. Super. 441 (Law Div. 1968):
For a majority of people the purchase of a new car is a major investment, rationalized by the peace of mind that flows from its dependability and safety. Once their faith is shaken, the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired. * * * [at 458]
The Uniform Commercial Code, N.J.S.A. 12A:1-101 et seq., governs the rights and remedies of the parties to the transaction. N.J.S.A. 12A:2-711 empowers the buyer to cancel a contract of sale upon justifiable revocation of acceptance. The equitable remedy of rescission is open to him; the principles of law and equity supplement the U.C.C. unless specifically superseded. N.J.S.A. 12A:1-103.
No longer is a buyer barred from the remedy of rescission because of his continued use of substantially impaired goods which are a necessity to him; all reasonable leeway is granted to the rightfully rejecting or revoking buyer. To require such a buyer to discontinue his use and suffer financial or other hardship would be contrary to the Code's rule of reasonableness and its underlying purposes and policies. N.J.S.A. 12A:2-604; Fablok Mills v. Cocker Mach. Co., 125 N.J. Super. 251, 258 (App. Div. 1973) (where seller was the only domestic manufacturer of a particular type of knitting machine); Uganski v. Little Giant Crane & Shovel, Inc., 35 Mich. App. 88, 192 N.W.2d 580, 589 (Ct. App. 1971) (allowing revocation of acceptance of a crane after extended use where plaintiff buyer was financially unable to purchase a substitute); see also, Fargo *378 Mach. & Tool Co. v. Kearney & Trecker Corp., 428 F. Supp. 364, 378 (E.D. Mich. 1977).
Plaintiff accepted delivery of his new car. The next day and thereafter he attempted to exercise his right to revoke his acceptance under N.J.S.A. 12A:2-608, as the initial painting and each succeeding repainting chipped and peeled. Substantial impairment of the car's value to him in accordance with the test in Herbstman v. Eastman Kodak Company, 68 N.J. 1, 9 (1975), is found as a fact.
Plaintiff's revocation of acceptance was pursuant to N.J.S.A. 12A:2-608(1) (b); his acceptance was reasonably induced by the difficulty of discovery of unsatisfactory paint adhesion before acceptance. His attempts to revoke were met by rigid refusals to rescind. Under N.J.S.A. 12A:2-508 a seller has the right to cure defects in the goods upon rejection by the buyer if the time for performance has not expired. No such right to cure is specifically vouchsafed upon a revocation of acceptance. The right to cure after acceptance should be limited to trivial defects or defects easily curable, not to defects which substantially impair value. Herbstman, supra, 68 N.J. at 9. See discussion in Asciolla v. Manter Oldsmobile-Pontiac, Inc., 370 A.2d 270, 274 (N.H. Sup. Ct. 1977).
No practical alternative was available to plaintiff except to allow defendant dealer to attempt three times to repaint the car satisfactorily. A motor vehicle was a necessity to him. His financial resources were not such that he could return it and sue for rescission, awaiting an outcome at least several months away. Contrast with Conte v. Dwan Lincoln-Mercury, Inc., 172 Conn. 112, 374 A.2d 144, 147 (Sup. Ct. 1976). His acquiescence in the three repaintings was under duress and unconscionable because of the Ford Motor Company policy. N.J.S.A. 12A:2-302.
Plaintiff did not accept the car after each repainting except on the assumption that its defects had been cured. N.J.S.A. 12A:2-608(1) (a) is analogous:

*379 (1) The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it
(a) on the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; * * *.
This court holds that plaintiff justifiably revoked his acceptance on the day after delivery under the circumstance that his acquiescence in the first repainting was under duress and unconscionable; alternatively, that he justifiably revoked his acceptance upon discovery of substantial defects after each successive repainting, including the third.
Plaintiff's revocation of acceptance was timely under N.J.S.A. 12A:2-608(2), within a reasonable time after discovery of substantial defects. Defendants contend that he should be barred by laches because of the seven to eight month interval between the discovery of further chipping after the third repainting and the institution of this action for rescission. As noted supra, return of the car was not a precondition for rescission. The demand for a new car with a credit for use of this car, or some other settlement, was communicated promptly. The parties negotiated towards settlement throughout most of the seven-to-eight-month period. No unreasonable delay either in revoking or in instituting this action justifies a dismissal.
Several reported decisions under the U.C.C. have granted rescission despite continuing use of defective goods for a year or more while attempts to repair and settlement negotiations were carried on. Fablok Mills, supra; Conte, supra; Stroh v. American Recreation & Mobile Home Corp., 35 Colo. App. 196, 530 P.2d 989 (Ct. App. 1975); Uganski, supra.
Plaintiff is entitled to a judgment of rescission and the return of his purchase price with interest against Larson Ford. As to any offset for use of the car the U.C.C. is silent. Thus general equitable principles apply and must be brought into play. As stated by Judge (now Justice) Handler in Medivox Prod., Inc. v. Hoffmann-LaRoche, Inc., *380 107 N.J. Super. 47, 76 (App. Div. 1969), not a U.C.C. case: "After part performance a party is not entitled to rescind without returning or tendering the consideration or benefits received." Cases under the U.C.C., Amer. Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 334-35 (Ch. Div. 1970); Stroh, supra; Orange Motors of Coral Gables v. Dade Co. Dairies, 258 So.2d 319, 321 (Fla. Ct. App. 1972), cert. den. 263 So.2d 831 (Fla. Sup. Ct. 1972); Moore v. Howard Pontiac-American, Inc., 492 S.W.2d 227, 230 (Tenn. Ct. App. 1972), are in accord. In equitable theory plaintiff was a bailee of the car after his right of rescission accrued.
Larson Ford is awarded an offset against the purchase price in the amount of 6 1/2 cents per mile (the rate stipulated between the parties) for total mileage driven for more than two years until the return of the car. Ford Motor Company and Larson Ford should apply the indemnification agreement in effect between them in satisfying the judgment.