Belknap County Probate Court
No. 80-355

IN THE MATTER OF RAYMOND S.

May 11, 1981

*Barry J. Walker*, assistant district counsel, by brief and orally, for the plaintiff United States Veterans Administration.

*Stephen J. Neubeck*, of Meredith, by brief and orally, for Raymond S.

BROCK, J. This case, which involves the appointment of a guardian for an incompetent veteran, comes before us on transferred questions of law from the Belknap County Probate Court (*Burlingame*, J.). The issue raised in these questions is whether RSA ch. 464-A (Supp. 1979) (Guardians and Conservators) is a statutory scheme separate and distinct from RSA ch. 465 (Guard-

ianship of Incompetent Veterans, Etc.) or, in the alternative, whether RSA ch. 464-A (Supp. 1979) repeals RSA ch. 465 by implication.

The individual who is the subject of this case, Raymond S., is a veteran of the United States Armed Forces. He was determined to be incompetent by the United States Veterans Administration (VA). Since under various federal laws and regulations, an incompetent veteran cannot directly receive veterans benefits, in 1960 Raymond S.'s brother, Thomas, was appointed guardian for Raymond under RSA ch. 465, the statute relating to the affairs of incompetent veterans. This enabled Raymond to continue to receive veterans' benefits.

At the time Thomas was first appointed as Raymond's guardian, there were three statutory chapters relating to guardianships: RSA ch. 462 (Guardian and Ward); RSA ch. 464 (Mentally Incompetent Persons, Spendthrifts, Etc.); and RSA ch. 465 (Incompetent Veterans). RSA chs. 462 and 464 were repealed in 1979 and replaced by RSA ch. 464-A (Supp. 1979), but RSA ch. 465 remained unchanged.

The current controversy arose in January 1980, when the Belknap County Probate Court notified Thomas that his brother's guardianship would be reviewed pursuant to RSA 464-A:38 V (Supp. 1979) and that an attorney would be provided for Raymond under RSA 464-A:6 (Supp. 1979). Shortly thereafter, the VA petitioned the court requesting that Thomas continue as guardian. The VA also maintained that RSA ch. 465 guardianships are not subject to review under RSA ch. 464-A (Supp. 1979).

The first question transferred by the probate court is:

> "Does RSA ch. 465 continue as a wholly independent statutory procedure for the appointment of a guardian and maintenance of a guardianship subsequent to the enactment of RSA 464-A?"

Because we answer this question in the affirmative, we need not consider the remaining questions transferred.

■■ Although RSA ch. 464-A (Supp. 1979) substantially revised the law concerning other guardianships, the legislature did not repeal or modify the provisions of RSA ch. 465, a chapter that obviously addresses the special requirements of incompetent veterans and insures that they will continue to receive their VA benefits. Indeed, an RSA ch. 465 guardianship may exist only in those cases in which the director of the VA requires that a guardian be

appointed as a condition to the payment of benefits to the veteran. RSA 465:2.

 Because of the special circumstances attendant to the payment of veterans' benefits, the requirement that a guardian be appointed for incompetent veterans, and the fact that the legislature specifically repealed two guardianship chapters when it enacted RSA ch. 464-A (Supp. 1979) but did not repeal RSA ch. 465, we do not consider the enactment of RSA ch. 464-A (Supp. 1979) to constitute a repeal by implication of RSA ch. 465. *See* 1A C. SANDS, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 23.11 (3d ed. rev. 1972). "[I]mplied repeal of former statutes is a disfavored doctrine in this State." *Board of Selectmen v. Planning Bd.*, 118 N.H. 150, 152–53, 383 A.2d 1122, 1124 (1978). Accordingly, we answer the first question transferred in the affirmative, holding that RSA ch. 465 prescribes the procedure for the appointment of guardians over incompetent veterans in those cases where the director of the United States Veterans Administration has required that a guardian be appointed. *See* RSA 465:2.

Although our answer to the first question renders it unnecessary to further consider the applicability of RSA ch. 465, the parties have raised other matters which, in the interest of judicial economy, we wish to address at this time.

 Our concern, and that of the parties before us, is with the fact that the probate court has given powers to a guardian appointed under RSA ch. 465 that go beyond the power merely to supervise and control the veteran's benefits. Under RSA 465:1 "[t]he term 'guardian' . . . mean[s] any person acting as a fiduciary for a ward." Moreover, a guardian appointed under RSA ch. 465 has guardianship powers only over a limited portion of the veteran's estate; "[t]he terms 'estate' and 'income' shall include *only* moneys received by the guardian from the bureau [now veterans administration] and all earnings, interest, and profits derived therefrom." RSA 465:1. (Emphasis added.) Therefore, a guardian under RSA ch. 465 has the power to act as the veteran's fiduciary only with respect to the receipt and expenditure of veteran's benefits. No other powers can be derived from RSA ch. 465. Thus, whenever a guardianship is sought over the veteran's person or his other assets, RSA ch. 465 is not applicable and the procedures mandated by RSA ch. 464-A (Supp. 1979) must be followed. The two types of guardianships may exist independent of one another.

*Remanded.*

All concurred.