Merrimack
No. 80-150

## H. G. FISCHER X-RAY COMPANY, INC.

v.

## WILLIAM H. MEREDITH

August 10, 1981

708

*Stark & Peltonen P.A.*, of Manchester (*Rodney L. Stark* on the brief), by brief for the plaintiff.

*Wadleigh, Starr, Peters, Dunn & Kohls*, of Manchester (*William S. Gannon* on the brief), by brief for the defendant.

PER CURIAM. This case arises out of the installment sale of an X-ray machine by the plaintiff, H. G. Fischer X-Ray Company, Inc., to the defendant, William H. Meredith. After the defendant ceased making installment payments because of alleged defects in the machine, the plaintiff brought suit to recover the unpaid balance on the machine. The defendant counterclaimed, alleging breach of warranty and revocation of acceptance. The Master (*Robert A. Carignan*, Esq.) rejected the defendant's counterclaims and recommended that judgment be entered for the plaintiff in the amount of $9,758.84. The Superior Court (*Souter*, J.) approved the master's recommendation, and the defendant appealed.

The plaintiff, a Florida corporation doing business in the State of Florida, sells and services X-ray equipment. The defendant is a chiropractor who uses X-ray equipment in his practice. The defendant had originally practiced chiropractic in New Hampshire but moved to Florida in 1971.

On June 17, 1976, the defendant purchased an X-ray machine from the plaintiff. He began making installment payments on the machine pursuant to the parties' retail installment sale contract on August 1, 1976. In October 1976, the defendant returned to New Hampshire to resume his practice in this State, bringing the X-ray machine with him as an integral part of his practice.

Sometime between June 1976 and June 1977, the defendant began experiencing problems with the X-ray machine. He alleges that the machine lacked sufficient power to "penetrate" heavy patients, thereby rendering the films taken of heavy patients unusable for diagnostic purposes. Because the plaintiff is not licensed to service X-ray equipment in New Hampshire, the defendant sought to have the penetration problem corrected by several different New England-based X-ray machine companies. These attempts to remedy the alleged defect were unsuccessful, and the defendant ceased making installment payments on the machine after June 1, 1977. The plaintiff then initiated the present litigation.

The principal issue on appeal relates to the master's ruling that whatever warranties the plaintiff had made to the defendant regarding the X-ray machine were unavailable to the defendant once he had removed the machine from Florida. The master found that the defendant's decision to remove the X-ray machine to New Hampshire "was sudden, decisive, non-negotiable, and totally the decision of the defendant" and that the removal of the machine was contrary to the specific terms of the parties' installment sale contract. Consequently, the master concluded, the defendant had

710

knowingly "abandoned his warranties." The defendant contends that this ruling is erroneous as a matter of law. We agree.

■■■ We know of no authority, nor has the plaintiff cited any, that would support the master's conclusion that a buyer can "abandon" his warranties merely by removing the goods he purchased from the state in which the seller does business. Absent a valid disclaimer, *see* RSA 382–A:2–316, any express warranties made by the seller and an implied warranty of merchantability attach to goods that are the subject of a sale. *See* RSA 382–A:2–313, :2–314. These warranties relate to the goods themselves and are not limited in scope by state boundaries. Of course, a local dealer such as the plaintiff would be relieved of its obligation to repair or service the goods *itself* once the goods were removed from the area in which it sells and services them. Nevertheless, the seller still stands behind the goods to the extent of any warranties made by him or implied by law, and he is liable for any breach of those warranties regardless of where the goods are located at the time of the breach.

■ A contrary conclusion is not compelled by the parties' security agreement—installment sale contract, in which the defendant agreed not to remove the X-ray machine "from the address or area as herein specified, without the prior written consent of the . . . [seller]." That provision is merely designed to facilitate repossession by conditional vendors such as the plaintiff in the event that the buyer defaults; it does not impose geographical limitations on the seller's warranties.

We therefore hold that the master erred in ruling that the defendant had "abandoned" his warranties by taking the X-ray machine to New Hampshire. The case is remanded to the superior court in order for the master to determine the nature and scope of the seller's warranties, whether the seller breached any of these warranties, and, if so, the remedy to which the defendant is entitled. In the interests of judicial economy and in order to narrow the scope of the remand, we address certain aspects of these questions on appeal. *See In the Matter of Raymond S.,* 121 N.H. 411, 414, 430 A.2d 182, 183 (1981); *State v. Pugliese,* 120 N.H. 728, 731, 422 A.2d 1319, 1321 (1980).

■■ With respect to the warranties made by the seller, the parties' installment contract contained the following provision:

"THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY OR OTHER-

WISE, EXTENDING BEYOND THE DESCRIPTION
OF SAID PROPERTY AND ACCESSORIES."

By using this language, the plaintiff effectively disclaimed the implied warranties of merchantability and fitness for a particular purpose. RSA 382-A:2-316(2); *see Collella v. Beranger Volkswagen, Inc.*, 118 N.H. 365, 386 A.2d 1283 (1978). In its description of the goods, however, the plaintiff expressly warranted that the machine would be capable of producing up to 300 milli-amps at 125 kilovolts. This fact was confirmed by the plaintiff's only witness at trial, who testified that the machine was designed to "put out a maximum . . . of 300 milli-amps at 125 KVP." Thus, notwithstanding the disclaimer, the defendant still had the benefit of this warranty. On remand, the master should determine whether the plaintiff made any other express warranties which cannot reasonably be construed to have been disclaimed. *See* RSA 382-A:2-316(1); *Wilson Trading Corp. v. David Ferguson, Ltd.*, 297 N.Y.S.2d 108, 113-14, 244 N.E.2d 685, 688-89 (1968).

■ If the master finds that the plaintiff breached any of its express warranties, *see Werner v. Montana*, 117 N.H. 721, 728, 378 A.2d 1130, 1134 (1977), and that the defendant notified the plaintiff of such breach within a reasonable time after discovering it, *see* RSA 382-A:2-607(3)(a), he should then decide what remedies are available to the defendant under the Uniform Commercial Code.

At trial, the defendant sought to revoke his acceptance, *see* RSA 382-A:2-608, or, in the alternative, to recover damages for breach of warranty. *See* RSA 382-A:2-714. The master rejected the defendant's claim of revocation, ruling that "the defendant never revoked his acceptance of the X-ray machine in question, but continued to use the machine on a daily basis." We uphold this ruling.

■ In order to revoke his acceptance, the buyer must notify the seller of his intent to do so "within a reasonable time after the buyer discovers or should have discovered the ground for it. . . ." *Werner v. Montana*, 117 N.H. at 730, 378 A.2d at 1135 (quoting RSA 382-A:2-608(2)). Continued use of goods by the buyer after he discovers that he has grounds for revocation does not necessarily preclude him from revoking his acceptance. *See Mobile Home Sales Manage., Inc. v. Brown*, 562 P.2d 1378, 1383 (Ariz. App. 1977); *Welch v. Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. 358, 364-65, 430 A.2d 144, 149 (1981); *Pavesi v. Ford Motor Co.*, 155 N.J. Super. 373, 377, 382 A.2d 954, 956 (1978). In this case, however, the defendant knew of the alleged defects at least as early as June

1977, when he stopped making payments on the machine, and yet was still using the machine as of November 1979, the date of trial. Furthermore, although the X-ray machine was a necessary part of the defendant's practice, there is nothing in the record that would indicate that the defendant could not have purchased a new X-ray machine and returned the allegedly defective one to the plaintiff within a reasonable time after discovering the defects. The substantial and unnecessary delay in this case was inconsistent with revocation of acceptance and, in the circumstances presented, the defendant cannot avail himself now of that remedy. *See Fargo Mach. & Tool Co. v. Kearney & Trecker Corp.*, 428 F. Supp. 364, 378 (E.D. Mich. 1977).

■ Although the defendant is now barred from revoking his acceptance, he may still recover damages for any breach of warranty on the plaintiff's part and would be entitled to a set-off in the amount of those damages. Accordingly, if on remand the master finds that the plaintiff has breached any warranties made by it, he should then proceed to conduct a hearing on the issue of the defendant's damages.

The plaintiff's final argument relates to a clause in the parties' installment sale contract providing that "[i]f this contract is, after default, referred to an attorney for collection or enforcement, buyer agrees to pay a reasonable attorney's fee (to be not less than 15% of the amount involved), plus reasonable appellate fees. . . ." At the trial below, the master awarded the plaintiff attorney's fees in the amount of $1,463.83, which sum represents 15 percent of the judgment for the plaintiff. The plaintiff contends that it is also entitled to appeal-related attorney's fees under the installment sale contract.

■ ■ Contractual provisions requiring the buyer to pay reasonable attorney's fees in the event that the contract is referred to an attorney for collection or enforcement are generally valid and enforceable. *See, e.g., Zambruk v. Perlmutter 3rd Generation Builders, Inc.*, 510 P.2d 472, 476 (Colo. App. 1973); *Carol Management Company v. Baring Industries*, 257 So. 2d 270, 272 (Fla. Dist. Ct. App. 1972). The purpose of such a provision, however, is to enable a seller who, through no fault of his own, is forced to resort to the legal process to collect that which is rightfully his, to recover the full amount of the debt owed him. It may not be used by the seller to finance litigation occasioned by his own fault.

In this case, it appears that the defendant may well have a valid claim for breach of warranty. If the master finds that the plaintiff

is liable for breach of warranty, then the plaintiff is not entitled to recover any attorney's fees. If, on the other hand, the master finds for the plaintiff on this issue, then the master shall award the plaintiff attorney's fees, including reasonable appellate fees in such amount as the court may determine, pursuant to the parties' contract.

*Reversed and remanded.*

BATCHELDER, J., did not sit.