**DAVID COVER, Plaintiff**

**v.**

**ISLAND CARS OF ST. CROIX, Defendant**

Civil No. 1322/80

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

April 5, 1982

DIANA BOLLING, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

DOUGLAS BRADY, ESQ., Christiansted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION

This case is before the Court for disposition after a bench trial. It is entitled an "Action for Damages," but would be more properly styled an "Action for Breach of Contract and Rescission."

### FACTS

On or about June 1, 1980, plaintiff, David Cover, purchased a BMW 320i automobile represented to be a 1979 model from defendant Island Cars of St. Croix, Inc. (hereinafter "Island Cars"). John Prosser, the manager of the St. Croix office of Island Cars, sold the car in question for $9,500.00 to Cover, allegedly on behalf of Joseph Bodak. In payment, plaintiff tendered his 1979 Mazda RX7 automobile, which was assigned a trade-in value of $8,000.00. Additionally, he made a cash payment of $1,500.00.[1]

On May 29, 1980, Cover went to Island Cars to finalize the purchase. Prosser told him that the car was in the body shop for repairs. When plaintiff returned to pick up the car, Prosser handed him the registration in an envelope, which he, Cover, in turn took to the Department of Public Safety. The registration slip he received from the clerk described the automobile as a 1978 rather than a 1979 model. Upon questioning the clerk, he was shown the old regis-

---

[1] Defendant's Exhibit B.

tration which was for a 1978 car. Cover returned to Island Cars to speak with Prosser.

After being asked twice by Prosser to return for an explanation, Cover was informed by Prosser that he must have made a mistake about the year of the car because he was given misleading information by the owner, Bodak. On June 16, 1980, plaintiff attempted in person to deliver a letter to Prosser, but Prosser refused to accept it. Cover left it with one of the employees at Island Cars. The substance of the letter requests that Cover be given a 1979 car in good working order, as opposed to the 1978 model which he received.[2] On June 30, 1980, defendant, by and through its attorney Douglas Brady, sent a letter to plaintiff informing him of defendant's offer to rescind the contract and return the parties to status quo.[3] Cover did not return the 1978 BMW by the date requested, July 3, 1980, and in fact has never returned the car. It continues today to be in his custody, although he is not in actual possession, the car now being in a repair shop. On December 12, 1980, plaintiff, by his then attorney Winston Hodge, filed this lawsuit against John Prosser and Island Cars. Both defendants moved for summary judgment. An order was entered on June 25, 1981, granting Prosser's motion for summary judgment but denying Island Cars' motion. Thereafter, trial of this action was held on January 19, 1982.

The only claim advanced in the complaint is based upon fraud in misrepresenting a 1978 model automobile as a 1979 model. This raises certain issues which the Court will deal with seriatim below. The cost of repairing the defects was neither pleaded nor litigated, however, and no recovery can be made thereon.

## DISCUSSION

### I. *Agency Relationship*

In the motion for summary judgment made prior to trial, defendant asserted its status as an agent for Joseph Bodak as a defense to liability. The Court disagreed at that time, and its posture remains unchanged at this juncture.

■■ It is the general rule that an agent is not liable to any person other than the principal for failure to adequately perform his duties. Newman v. Forward Lands, Inc., 418 F.Supp. 134, 137 (E.D.

---

[2] Plaintiff's Exhibit #7.

[3] Exhibit B to defendant's motion for summary judgment.

Pa. 1976). The exception to this rule may be found in the RESTATE-MENT (SECOND) OF AGENCY § 348:

> An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of a tortious fraud or duress by his principal or by others is subjected to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.

The case law is fairly uniform in finding that when an agent has made fraudulent misrepresentations during a transaction he may be subjected to liability to the injured party for the fraud. Lock v. Schreppler, 426 A.2d 856, 862 (Del. Super. 1981); Anders v. Dakota Land & Development Co., Inc., 289 N.W.2d 161, 163 (Minn. 1980). See Bechtel v. Liberty National Bank, 534 F.2d 1335, 1339, fn. 6 (9th Cir. 1976) (plaintiff need not show that misrepresentations were attributed to defendant individually so long as sufficient evidence is introduced to show defendant's personal involvement in sale).

■ The evidence and testimony at trial tended to prove that the misrepresentation was a knowledgeable one, made by John Prosser in his capacity as general manager of the St. Croix branch of Island Cars. The defendant held Prosser out as having authority to represent the age and quality of vehicles. It would not be unwarranted that the public would rely on these representations. The Court finds that Cover did in fact rely on these warranties made by Prosser. That these representations were willfully and intentionally made is supported by the evidence of similar occurrences taking place on two different occasions in the years immediately preceding this misrepresentation. Mr. Lamar Kingston testified that he purchased, in 1977, what was represented to him as a 1975 BMW automobile. In fact, it was a 1974 model. When confronted with the error, Prosser admitted his "mistake" and reduced the price. Mr. Cecil Hodge testified that in 1979 he bought what was purported by Prosser to be a 1973 BMW automobile. Actually it was a 1972 car, for which he received no reduction in price for the "mistake."

■ Defendant Island Cars, through its employee, made fraudulent statements regarding a material fact in connection with the sale of this car. As such the defendant may not now avoid liability by pleading an agency relationship nor by asserting that the transaction between itself and Bodak was gratuitous in nature.

## II. *Rescission*

■ The purchase of the car involved a sale of goods and is

therefore governed by the provisions of the Uniform Commercial Code. 11A V.I.C. §§ 1—101-2—725. Section 2—607 provides in pertinent part that:

> (2) Acceptance of goods by the buyer precludes rejection of the goods accepted . . . but acceptance does not of itself impair any other remedy provided by this article for nonconformity.
>
> (3) Where tender has been accepted
>
> (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

Section 2—608 reads:

> (1) The buyer may revoke his acceptance of a lot or commercial unit where nonconformity substantially impairs its value to him if he has accepted it
>
> . . . .
>
> (b) without discovery of such nonconformity if his acceptance was reasonably induced by the . . . seller's assurances.

There is no question here about the timeliness of Cover's notice to the defendant. Lehigh, Inc. v. Stevens, 468 P.2d 177, 182 (Kan. 1970) (buyer must, within reasonable time, return, or offer to return, property to vendor). The breach was not known at the time of the sale because Prosser had represented to the plaintiff the model of the car to be a 1979 instead of a 1978. Cover, immediately upon learning that the car was a 1978 model, informed defendant of this fact. By a letter dated June 16, 1980,[4] plaintiff requested rescission of the contract. At that point he had done all that was required of him. See Pavesi v. Ford Motor Co., 382 A.2d 954, 959 (N.J. Super. 1978) (plaintiff found to have revoked acceptance on a day after delivery of car). Here, however, the defendant by letter of its attorney agreed to rescind the contract and return plaintiff's car and money to him. Plaintiff failed to comply with the terms of the rescission. By exercising dominion over the car and using it, he reaffirmed his original acceptance. "Exercise of acts of ownership over the subject matter of the contract will validate the transaction and terminate the power of avoidance, regardless of whether the other party has suffered any prejudice." Gannett Co., Inc. v. Register Publishing Co., 428 F.Supp. 818, 826 (D. Conn. 1977).

The common law of rescission prior to the Code made a return of the goods, or an offer to return them, essential. See 77 Am.Jur.2d,

---

[4] Plaintiff's Exhibit #7.

Sales, § 714 (1973) (cases cited therein). Some courts, in interpreting the rights now afforded under the UCC for revocation of acceptance have held that it was the intention of the drafters to ameliorate the harsh requirement of the pre-Code law. In Pavesi, supra at 956, the court stated "[t]o require such a buyer to discontinue the use and suffer financial or other hardship would be contrary to the Code's rule of reasonableness and its underlying purposes and policies." See also Fablok Mills, Inc. v. Cocker Machine & Foundry Co., 310 A.2d 491, 494 (N.J. Supper. 1973) ("avoidance of an absolute rule against continued use is counseled by overriding requirement of reasonableness which permeates the Code.").

The Court in Fargo Machine & Tool Co. v. Kearney & Trecker Corp., 428 F.Supp. 364, 378 (Ed. Mich. 1977) found that a relaxation of the rule could not be applied to all circumstances. The "factors militate strongly against granting Fargo the harsh remedy of revoking its acceptance and casting back into the lap of Kearney & Trecker a machine which has been used productively for the major part of its life expectancy." Id. at 380–81.

Plaintiff's obligation was to return the car on the date indicated by defendant. Had that occurred, a rescission would have taken place wherein the BMW would be returned to Island Cars and Cover would have had returned to him his car plus the money he paid. To have failed to do this, and to have kept the car until now, some twenty months afterward, revokes the rejection. No countervailing and persuasive reason exists for the Court to make a contrary finding. The facts which led the courts to arrive at a different result in Pavesi and Fablok Mills are simply not present here. Plaintiff's "continued use of the automobile after [his] attempted rejection invalidates the revocation of acceptance." Waltz v. Chevrolet Motor Division, 307 A.2d 815, 816 (Del. Super. Ct. 1973).

### III. Damages

Having determined that rescission is not a proper remedy, the Court must now determine if the pleadings and proof justify an award of damages on any other pleaded theory.

■■ The testimony of William L. Frederick, Vice President of Island Cars, and David Cover supports the proposition that the price would be different for a 1978 model car as opposed to a 1979 model. The Court, however, was given no guidance in this regard as to what that difference is. Since the Court will not speculate, this evidence suports only a finding of nominal damages. See St. Thomas House, Inc. v. Barrows, 15 V.I. 435, 442 (Terr. Ct. 1979) (nominal damages

follow from violation of legal right even if no actual damages are proven). Such damages in this circuit are limited to one dollar. Mayberry v. Robinson, 427 F.Supp. 297, 314 (M.D. Pa. 1977). See United States ex rel. Tyrsell v. Speaker, 535 F.2d 823, 830 (3d Cir. 1976).

■ Punitive damages, however, may be awarded where the "defendant's wrongdoing has been intentional and deliberate, and has the character of outrage." W. Prosser, HANDBOOK OF THE LAW OF TORTS § 2 p. 9 (4th ed. 1971). The conduct of Island Cars was an intentional and willful misrepresentation of the kind and quality which is appropriately sanctioned by an award of punitive damages. This is exemplified by the fact that a consumer is generally at a disadvantage when purchasing a car from an automobile dealer. The disparity between the knowledge and bargaining power of the two parties is great and the integrity of the dealer must be presumed. Where this trust is violated in an egregious manner, exemplary damages should be awarded.

■ There was no evidence specifically presented on the issue of the net worth of the defendant. This is usually a sine qua non before a court may find specific damages of a punitive nature. In this instance, the conduct was so outrageous, especially in light of the repetitions of these misrepresentations, as to permit the court to make a finding from the inferences before it. These inferences, if not going directly to the question of net worth, are some evidence of the financial condition of the defendant. William Frederick, the Vice President of Island Cars, testified that the company is still in business and still selling BMW cars. It is reasonable to infer that defendant's net worth is at least equal to the value of the car in this case. The testimony and evidence were that this car was sold for $9,500.00.[5] Therefore, an award of 25% of the value of this car would not be purely speculative but would be a reasonably deterrent award, likely to accomplish the goal of punitive damages. The counterclaim is dismissed. Total damages, nominal and punitive, therefore, are assessed in the amount of $2,501.00. The defendant, having failed by a preponderance of the evidence to establish its counterclaim, is denied relief.

---

[5] Plaintiff's Exhibit #3 and Defendant's Exhibit B.