**DIGBY STRIDIRON, Plaintiff**

v.

**I.C., INC. d/b/a ISLAND CARS OF ST. CROIX, Defendant**

Civil No. 1982/27

District Court of the Virgin Islands

Div. of St. Croix

January 4, 1984

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

DOUGLAS A. BRADY, ESQ., Christiansted, St. Croix, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This matter involves an appeal from a decision of the Territorial Court permitting Appellee, plaintiff-below Digby Stridiron ("Stridiron") to revoke his acceptance of the sales contract under which he bought a new automobile from Appellant, defendant-below I.C., Inc. d/b/a Island Cars of St. Croix ("Island Cars"). Island Cars contends that the court below erred in finding that all the criteria of 11A V.I.C. § 2—608 governing the revocation of acceptance of a contract were met by Stridiron. Further, Island Cars claims that the amount of damages awarded was excessive. For the reasons set forth herein we will not disturb the factual findings of the Territorial Court or its holding that the sales contract was successfully revoked. The award of damages, however, is modified as herein provided.

### I. FACTS

The facts as found by the Territorial Court and adopted by us are these:

On January 19, 1979, Stridiron bought a new 1978 Renault Gordine from Island Cars for $8,500.00. He made a $500.00 down payment and received financing for the balance from the Bank of Nova

Scotia at a cost of $1,249.20. He purchased the automobile primarily to provide transportation to and from work at Hess Oil.

Less than two weeks later Stridiron brought the car back to Island Cars for repairs made necessary by an oil leak. The car remained in Island Cars' possession for approximately five days. Two months later on April 5, 1979, the car was returned for two days, this time for replacement of the roller gears in the electric sun roof.

In May of 1979 Stridiron again brought the car in because it would stall when shifted into third gear. The alternator, regulator, and battery were replaced at a cost of $250.00 to Stridiron. On July 11, 1979, he got the car back. Three days later it was towed to Island Cars because it would not start. It was not until September 7, 1979, that all necessary repairs were completed.

In the meantime, on July 11, 1979, Stridiron had filed a complaint in the Small Claims Division of the Territorial Court seeking to recover $519.00 for damages and loss due to a burglary and defective repairs. This action was ultimately dismissed, and on November 7, 1979, the court instructed Stridiron to retrieve the car from Island Cars.

Stridiron never picked the car up after July 1979 when he had returned the keys to Island Cars. During the period when the car was in Stridiron's possession he installed a stereo system, tinted the windows and added approximately 6,833 miles to the odometer.

## II. DISCUSSION

The role of this Court in reviewing a decision of the Territorial Court is limited. According to 4 V.I.C. § 33 "[f]indings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the municipal court to judge the credibility of the witnesses."

In United States v. Gypsum Co., 333 U.S. 364 (1947), the Supreme Court determined that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id. at 395.

The Third Circuit has further outlined the appellate role in Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972), where it stated:

> It is the responsibility of an Appellate Court to accept the ultimate factual determination of the fact finder unless the determination either (1) is completely devoid of minimum eviden-

tiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data. Unless the reviewing court establishes the existence of either of these factors, it may not alter the facts found by the trial court.

Id. at 1302.

Island Cars contends that the trial court erred in both its findings of fact and as a matter of law. In order for this Court to reverse the trial court's ruling, Island Cars has a substantial burden to meet.

## A. Findings of Fact

The facts of this case were in dispute at trial in the Territorial Court. Two very different accounts concerning the same series of events were presented by John Prosser, the manager at Island Cars, and Stridiron. But, as was so succinctly stated in Government of the Virgin Islands v. DuBoyce, 267 F.2d 512 (3d Cir. 1959), "[t]he trial judge heard the evidence; he had to make up his mind where the balance of credibility lay. He did so, and his conclusions supported as they are by adequate testimony are not to be interfered with by us."[1]

■ Because the facts as found by the trial judge are adequately supported by the evidence and are based on the trial judge's opportunity to judge the credibility of the witnesses, we cannot disturb her findings.

## B. Conclusions of Law

The trial court held that Stridiron was entitled to revoke his acceptance of the sales contract pursuant to 11A V.I.C. § 2—608. Accordingly, it had to find that (1) the nonconformity of the automobile substantially impaired its value to him, (2) the nonconformity was not seasonably cured, (3) revocation occurred within a reasonable time, and (4) there was no substantial change in the condition of the automobile.

### 1. *Substantial Impairment*

Based on its findings of fact, the trial court found that the car's value to Stridiron was substantially impaired. It stated that

There is a showing of a host of problems with the car, which obviously, when the cumulative effect is taken into account, shook the plaintiff's confidence in his purchase. When consid-

---

[1] We note that the trial judge in the instant case is a distinguished *female* jurist, the sexist barrier in our local court having been breached in 1971.

463

ered together the numerous defects rendered the car inoperable, and certainly not fit for the purpose it was bought, namely driving.

Stridiron v. I.C., Inc., Civ. No. 162-80 (Terr. Ct. St. Croix Sept. 18, 1981) (Mem. Op. at 4).

■ We find the sentiment expressed in Zabriskie Chevrolet, Inc. v. Smith, 240 A.2d 195 (N.J. 1968), to be controlling. There it was stated:

For a majority of people the purchase of a new car is a major investment, rationalized by the peace of mind that flows from its dependability and safety. Once their faith is shaken, the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired and whose operation is fraught with apprehension.

Id. at 205.

Zabriskie has also been oft cited for the proposition that

every new car buyer has a right to assume and, indeed, has been led to assume by the high powered advertising techniques of the auto industry that his new car, with the exception of minor adjustments, would be mechanically new and factory furnished, operate perfectly, and be free of substantial defects.

Id. at 202; Orange Motors of Coral Gables v. Dade Co. Dairies, 258 So.2d 319 (Fla. 1972); Pavesi v. Ford Motor Co., 382 A.2d 954 (N.J. 1978).

Island Cars still maintains that the defects in Stridiron's car were trivial and successfully repaired thereby precluding any revocation of acceptance. (Brief of Appellant at 7, 12.) It also claims that there was no evidence proffered that the subjective prong of the substantial impairment test was met, there being no proof as to loss of value to Stridiron particularly. (Brief of Appellant at 14.)

■ Having adopted the facts as found by the Territorial Court we cannot say that its finding of substantial impairment is erroneous.[2]

---

[2] In a similar Virgin Islands case the Court upheld the decision below and stated:
Rescission of the contract, or revocation of acceptance as it is referred to under 11A V.I.C. § 2—608, is permissible whenever there is a defect which substantially impairs the value of the item purchased and this defect is not seasonably cured after the seller is notified of the defect. It is a factual question as to whether these conditions have been met and in light of the evidence before the

## 2. *Seasonable Cure*

The trial court found: ". . . where a car is constantly besieged with problems, it is sufficient that the cumulative effect of these defects has shaken the buyer's confidence in the purchase. Seasonable cure becomes, therefore, irrelevant." (Mem. Op. at 5.)

■■ Although we believe that seasonable cure is not an irrelevant factor since it is set forth in 11A V.I.C. § 2—608(1)(a), we believe the record is replete with evidence that the car's defects were not seasonably cured. Starting two weeks after the purchase and ending six months later with Stridiron's revocation of acceptance Island Cars had numerous opportunities to put the car in perfect working condition. As stated in Orange Motors, supra:

> After the purchase of an automobile, the same should be put in good running condition; that is the seller does not have an unlimited time for the performance of the obligation to replace and repair parts. The buyer of an automobile is not bound to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty.

Id. at 320–21.

Finally, in Conte v. Dwan Lincoln-Mercury, Inc., 374 A.2d 144, 149 (Conn. 1976), the court found that the dealer did have the right to attempt to cure any defects in the automobile; but this opportunity does not last for an indefinite period of time.

## 3. *Reasonable Time*

11A V.I.C. § 2—608(2) requires that revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it. The trial court found that Stridiron's revocation was timely made. It rejected Island Cars' contention that Andrews v. Parrott, 9 V.I. 205 (1973), is dispositive, stating that instead of a fixed time limit the court must determine what is reasonable based on the facts and circumstances of the case. This is supported by UCC § 1—204(2) which provides: "What is a reasonable time for taking any action depends on the nature, purposes, and circumstances of such action."

---

trial judge, I could certainly not find his decision to rescind the contract based on the facts before him to be "clearly erroneous."
Armstrong Ford, Inc. v. Campbell, 14 V.I. 337, 342–43 (1977).

Island Cars maintains that revocation was not made until February 1980, at which time John Prosser testified Island Cars was served with the complaint in this case. But there was also testimony that Stridiron turned over the car keys in July 1979 in an effort to return the car. He never picked the car up again after that.

■ We agree with the trial court that Stridiron's revocation of acceptance six months after purchase was timely, where the seller made repeated assurances to the buyer that the defects would be cured. See, e.g., Conte v. Dwan Lincoln-Mercury, Inc., 374 A.2d 144, 149 (Conn. 1976) (revocation allowed 14 months after sale where buyer was in almost constant touch with dealer and was given continued assurances that car would be satisfactorily repaired); Stroh v. American Recreation & Mobile Home Corp., 530 P.2d 989, 992 (Colo. 1975) (delay of one year from date of purchase to revocation reasonable where buyer relied on representations of seller that defects would be cured).

4. *Substantial Change*

According to 11A V.I.C. § 2—608(2) revocation must also occur before any substantial change in the condition of the goods which is not caused by their own defects. The trial court, noting the great degree of discretion it is afforded in this area, found that the additions placed on the car do not show an exercise of dominion over the goods so as to bar an effective revocation of acceptance. (Mem. Op. at 7.)

During the course of his possession of the car, Stridiron had the windows tinted and installed a stereo system. We agree with the Court below that under the circumstances of this case these additions do not amount to substantial change.

More troubling to us, however, is the fact that the Court did not consider the 6,933 miles on the odometer upon revocation as a factor constituting substantial change. The court found that the maximum mileage at the time of purchase was 100 miles. John Prosser also testified that he had driven the car on an undetermined number of occasions. (Trial Transcript at 92.) Nevertheless, Stridiron drove the car approximately 6,833 miles in the short time the car was in his possession.

■■ The policy behind this change-in-condition rule is to provide substantial justice to the seller in regard to the condition of goods restored to him and to prevent unjust enrichment to the buyer. Hawkland, UCC series, § 2—608.04. The use of goods how-

466

ever, during a period in which the seller is trying unsuccessfully to correct defects should not be counted against the buyer. Changes in condition during this period can be said to fall broadly within the proviso of § 2—608(2) changes "caused by their own defects." Id. In Conte, supra, it was stated that "[c]ontinued use of the automobile was inevitable while there was an attempt to cure the defects as they became apparent and such use did not defeat the revocation in this case." Id. at 149. See also Jacobs v. Rosemount Dodge-Winnebago South, 310 N.W.2d 71 (Minn. 1981); Hardimon v. Cullum & Maxey Camping Caters, Inc., 591 S.W.2d 771, 774-75 (Tenn. App. 1979). (Buyer not precluded from revoking acceptance on ground that motor home had undergone a substantial change in condition in that it was driven 7000 miles before revocation.)

■ We, therefore, affirm the lower court's finding that there was no substantial change in the car preventing Stridiron from revoking acceptance.

5. *Damages*

■ There is no dispute that under 11A V.I.C. § 2—711 and § 2—715, an aggrieved buyer may sue for both restitution and consequential and incidental damages in the case of revocation of acceptance. Here we agree with the lower court that there has been a valid revocation of acceptance. The only question remaining is whether the amount of damages was proper.

The trial court awarded Stridiron the purchase price of the car, $8,500, pursuant to 11A V.I.C. § 2—711. It also awarded bank costs of $1,249.20 incurred by Stridiron in financing the car plus the $250 paid for repair parts as incidental damages permitted by 11A V.I.C. § 2—715. As the trial court stated: "Since there is a basis for awarding these sums in both law and upon the facts presented, judgment for the plaintiff will hereby be entered in the amount of $9,999.20." (Mem. Op. at 8.) The court also awarded interest on the purchase price from the sale date.

Island Cars claims that the damages awarded were contrary to law, grossly excessive, unfair and inequitable. It claims that this court should have granted an offset to reflect the use made of the car by Stridiron (Brief of Appellant at 20). The trial court found that the award of an offset would be unwarranted since the matter was neither pleaded nor proven, and that Stridiron's use of the car was

467

not capable of monetary quantification.[3] It therefore declined to award offset. (Mem. Op. at 9.)

Even though offset seems to be inconsistent with 11A V.I.C. § 2—608 which precludes revocation where there has been a substantial change in the condition of the goods, many courts and commentators have recognized and permitted sellers to offset the purchase price returned to revoking buyers in order to reflect the use of the goods made by the buyers. See G. Priest, Breach & Remedy for the Tender of Non-Conforming Goods Under the UCC: An Economic Approach 91 Harv. L. Rev. 960 (1978); White & Summers, UCC § 317 (2d ed. 1980); Orange Motors v. Dade County Dairies, Inc., 258 So.2d 319, 321 (Fla. 1972); Jorgensen v. Pressnall, 545 P.2d 1382, 1386 (Ore. 1976); Mobile Home Sales Management, Inc. v. Brown, 562 P.2d 1378 (Ariz. 1977), Pavesi v. Ford Motor Co., 382 A.2d 954 (N.J. 1978); Lawrence v. Modern Mobile Homes, Inc., 562 S.W.2d 729 (Kan. 1978). Although we recognize that there is authority to award an offset, we cannot say that the trial court erred by refusing to do so.

■ The court's award of interest is also contested by Island Cars. We must agree in the case of the $1,249.20 in interest charges incurred as a result of obtaining the bank loan used to purchase the car. There is authority to support both sides of this issue. Several courts which have considered it have concluded that finance charges may be included when calculating the value as warranted of a defective item. See e.g., Thompson v. Chrysler-Plymouth, Inc. v. Myers, 264 So.2d 893, 896–97 (Ala. 1972); Burrus v. Itek Corp., 360 N.E.2d 1168, 1172 (Ill. 1972). We are, however, bound by the Third Circuit case Chatlos v. Nat'l Cash Register, 635 F.2d 1081 (3d Cir. 1980), which stated:

> In the absence of special circumstances, interest is not a proper factor to be considered. Interest represents the cost of the money borrowed to buy the goods because capital was not available to make a cash purchase. If, however, the buyer is awarded lump sum damages, he would be able to make a replacement purchase without borrowing and incurring interest expenses. To

---

[3] We do not agree with the trial court that an offset would be impossible to calculate. In Germain v. Crown, 9 V.I. 501, 506 (1973), upon a showing of proof, the court allowed plaintiff $13.50 a day for 30 days for car rentals plus $195.99 for taxi fare without any proof. In Pavesi v. Ford Motor Co., 382 A.2d 954, 957 (N.J. 1978) the parties stipulated to an offset of 6 1/2¢ per mile for the mileage on the odometer.

the extent, therefore, that the recovery included interest on the original purchase, it would constitute a windfall.

Id. at 1088. See also Bendix Home Systems v. Jessop, 644 P.2d 843, 846 (Ala. 1982); Long v. Quality Mobile Home Brokers, Inc., 248 S.E.2d 311, 313 (S.C. 1978). Accordingly, the sum of $1,249.20 will be deducted from the determination of damages.

The other award of interest was on the purchase price from sale date. Island Cars claims that neither of the cases cited by Stridiron support such an award. In Pavesi v. Ford Motor Co., 382 A.2d 954, 957 (N.J. 1978) the court failed to specify whether the interest awarded was based on the entire purchase price and when it was to have begun to accrue. In Melody Home Mfg. v. Morrison, 502 S.W.2d 196, 204 (Tex. 1973), interest was awarded at the legal rate from the date of purchase of the defective mobile home on the difference between the value of the mobile home in its existing condition at the time of purchase and its reasonable cash market value if it had been free from defects.

■ We cannot justify the award of interest from the time of purchase, although we agree that it should be awarded on the purchase price at the legal rate. The question is when did it begin to accrue? We hold that prejudgment interest should be calculated from the time of revocation of acceptance, July 1979. Stridiron actually lost the use of his money from the time he no longer possessed the car and had revoked his acceptance of it. See Dobbs, Remedies § 3.5 at 173–74 (1973); Royce Chemical Co. v. Sharples Corp., 285 F.2d 183, 188 (2d Cir. 1960).

Finally, Island Cars points out that the Bank of Nova Scotia repossessed the car when Stridiron failed to make loan payments. It was sold at auction for $1,350. Island Cars claims that this amount should be offset against any award Stridiron received. (Brief of Appellant at 29.) Because we are confined by the trial record, it would not be proper to make a determination on this matter.

## CONCLUSION

For the foregoing reasons, the decision of the Territorial Court is hereby affirmed as to all issues except for the award of interest. The amount of $1,249.00 will be subtracted from the total damages awarded. Further, interest on the purchase price at $8,500.00 is to be paid at the legal rate from July 1979.

The matter will be remanded to the Territorial Court for entry of judgment in accordance with the decision herein.

## ORDER

THIS MATTER is before the Court on appeal from the Territorial Court. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the judgment of the Territorial Court be and the same is hereby AFFIRMED as to all issues except the award of damages; and

THAT this matter be remanded to the Territorial Court for entry of a Judgment in accordance with this Court's Memorandum Opinion.